FRANCIS L. MORRIS *et al.*, Plaintiffs-Appellants, *v.* UNION OIL COMPANY OF CALIFORNIA *et al.*, Defendants-Appellees.

Fifth District    No. 80-460

Opinion filed May 11, 1981.

John R. Meyer, of Meyer & Meyer, of Flora, for appellants.

Ben H. Rice, of Vinson & Elkins, of Houston, Texas, and Smith, McCollum, Riggle & Moses, of Flora, for appellee Union Oil Company of California.

Joe Dees, of Burnside, Dees & Johnston, of Vandalia, for other appellees.

Mr. JUSTICE HARRISON delivered the opinion of the court:

In the present action the appellants, Francis and Evelyn Morris, have sought to establish ownership of a 100.5-acre tract of land unencumbered by a reservation of the mineral interest therein held by former grantors in the chain of title. The matters concerned have been before this court in earlier proceedings styled *Morris v. Mayden* (1976), 35 Ill. App. 3d 338, 341 N.E.2d 428, *appeal denied* (1976), 63 Ill. 2d 552, hereinafter referred to as "*Morris I*".

Appellants seek to determine whether the present litigation, insti-

tuted by complaint on November 23, 1976, is barred under the doctrine of *res judicata* due to the earlier proceedings. The appellee, Union Oil Company of California, has filed a cross-appeal questioning the propriety of the circuit court's action vacating a prior dismissal of this suit which action made possible the present appeal. We affirm the decision of the circuit court.

In order that our disposition of this cause be fully comprehensible, it is necessary to review certain of the facts set out in our opinion in *Morris I*. On April 14, 1936, Zoa Moseley, as lessor, entered into an oil and gas lease with R. Z. McGowen for the drilling and development of her property; the subject property is located in Clay County, Illinois. The habendum clause in the lease provides that it shall "remain in force for a term of ten (10) years from this date, and as long thereafter as oil or gas or either of them is produced from said land by lessee." By proper assignment the present defendant, Union Oil Company, became the successor in interest of the lessee McGowen. In paragraph 5 of their amended complaint of November 22, 1978, the plaintiffs state that they do not dispute the continued existence of this lease relationship as between Union Oil Company and the successors of Zoa Moseley who are among the present defendants. According to their brief appellants are without personal knowledge but do not contest the fact or allegation that there has been continuous production from wells located within the physical boundaries of the concerned tract throughout the lease, up to and including the time at which this appeal was taken.

On May 31, 1957, some time after the death of Zoa Moseley, the surface estate was conveyed to Donald Hardy by her heirs. The warranty deed reserved to the heirs as grantors all interest in the oil, gas and other minerals lying in, on and under the described real estate, or that might be produced from it, "for the period for which the present oil and gas lease * * * remains in effect; * * *." The reservation provided that following the termination of the 1936 lease, the grantors would continue to retain an undivided one-half interest in the same mineral estate. An executory interest thus exists in the remaining one-half interest, which becomes possessory when and if the 1936 lease should terminate. By the same paragraph 5 referred to above in their amended complaint, plaintiffs do not now challenge the validity or continued effect of this mineral reservation up to the date August 31, 1968.

On August 28, 1959, title to the surface estate passed to the present plaintiffs subject to the recorded mineral reservation. All of the litigation which has ensued has involved an attempt by the plaintiffs to obtain either a partial or an entire interest in the mineral estate based upon the executory interest already mentioned.

In 1968 the tract was joined with approximately 2000 neighboring

acres in what was designated the Bunnyville Consolidated Unit. This project undertaken by Union Oil Company consolidated prior separate oil and gas leases in the area, owned by some 345 individuals, into one operating unit. Its purpose was to facilitate the use of secondary extraction methods in order to recover oil and gas deposits unobtainable through primary production methods. The instrument consolidating these leases, denominated the Royalty Owners' Unitization Agreement (hereinafter referred to as the Unitization Agreement), was entered into by the present defendants as royalty owners succeeding Zoa Moseley in the capacity of lessor. The instrument is necessary because secondary recovery methods depend upon operation without regard to property lines within the unit. By its express terms it serves to amend existing leases for purposes of the consolidation but otherwise leaves them in full force and effect. Article 3.3 expressly provides that continuing production in the Unit Area shall continue lease term royalty interests such as the one stemming from the Zoa Moseley 1936 lease. The trial court in *Morris I* found that within the meaning of the terms of the 1936 lease the operating efforts of Union Oil Company in unit production acted in fulfillment of its 1936 leasehold obligations. Therefore, it held that the original lease continued in effect.

Plaintiffs' first complaint in this long-lasting dispute was filed on December 1, 1970. Their initial action sought to rescind the Unitization Agreement as it applied to the mineral estate over which they claim a superior interest vis-á-vis the defendant royalty owners. In addition, they requested an injunction against recovery operations affecting the estate, and damages for oil and gas wrongfully appropriated from the date of March 1, 1968, the time at which the Unitization Agreement was entered into. The action was dismissed with prejudice in the circuit court of Clay County, which disposition we affirmed. (*Morris v. Mayden* (1976), 35 Ill. App. 3d 338.) The Illinois Supreme Court subsequently denied leave to appeal, thus ending direct review of the matter.

But some months later, on November 23, 1976, the same plaintiffs filed the present action in Clay County Circuit Court. As finally amended, count I of their pleadings seeks to quiet title in their asserted interest in the whole of the identical mineral estate, to rescind any leasehold interests running between the defendants, namely, the 1936 lease, but excepting the existing unitization agreement. Additionally, they seek an accounting for royalties properly attributable to them pursuant to commitment of the interest to the Unitization Agreement and for the net value of proceeds attributable to the value of minerals extracted from their estate by the defendant, Union Oil Company, from and after August 1, 1968, the alleged date of the implementation of the Unitization Agreement. In the alternative, count II, under the theory of ejectment, seeks to establish title

in fee simple absolute in the entire mineral estate, or alternatively, in an undivided one-half interest in that estate, stemming from the executory interest, together with a claim for damages to be filed at a later date pursuant to section 43 *et seq.* of "An Act in regard to the practice in actions of ejectments" (Ill. Rev. Stat. 1977, ch. 45, par. 44 *et seq.*).

It is central to the decision of the present appeal that we state what it was that *Morris I* determined. And normally this is governed by the judgment of the circuit court which has become final through affirmance. (*Baird & Warner, Inc. v. Addison Industrial Park, Inc.* (1979), 70 Ill. App. 3d 59, 66, 387 N.E.2d 831.) In the former adjudication the trial court proceedings ended at the pleading stages. On February 1, 1974, the circuit court ordered the plaintiffs' amended complaint dismissed for failure to state a cause of action against the defendants, based upon their failure to demonstrate a present interest in the mineral estate under contest. Lengthy and detailed pleadings preceded this dismissal which set forth all of the material legal instruments which the court was required to construe based on the allegations presented. We affirmed that disposition on appeal because the plaintiffs had nowhere in the pleadings alleged that production of oil and gas had ceased to flow from the term acreage. The absence of this crucial allegation was the central fact supporting the *ratio decidendi* of the case. We stated at page 341 of *Morris I* that the primary question to be decided was whether plaintiffs' interest in one-half of the mineral rights had ripened from an executory interest into a possessory one. Without such an interest they had no legal ground on which to base a complaint; the alleged cause of action did not exist in law. This was the basis of the trial court's judgment. And we affirmed that the defendants had correctly challenged the legal sufficiency of the pleadings.

■■■ In the Federal jurisprudence two branches of estoppel are applied to bar the maintenance of a cause of action. The term *res judicata* is applied to the more sweeping doctrine which prohibits the relitigation of claims and issues that were raised or could have been raised by a prior action between the same parties or their privies which has been resolved by final judgment on the merits by a court of competent jurisdiction. This branch has been referred to as "claim preclusion" based on its broad effect. Collateral estoppel, or "issue preclusion," stands for the doctrine which forecloses the relitigation of particular issues of either fact or law that are logically and legally necessary in reaching the prior judgment where such issues are again raised by at least one of the parties to the prior suit. The preclusion remains despite the fact that a different cause of action is pleaded in the subsequent proceedings. (*Allen v. McCurry* (1980), ___ U.S. ___, 66 L. Ed. 2d 308, 101 S. Ct. 411.) In Illinois the same distinction is established. In the case of claim preclusion our courts have historically referred to estoppel by judgment, or more recently, *res*

*judicata.* Issue preclusion has been historically denominated estoppel by verdict. (*Hanna v. Read* (1882), 102 Ill. 596, 602.) Both of these doctrines have been extensively briefed by the parties although appellants' arguments center on the former. In our opinion this doctrine is controlling.

■■■ The absolute bar of estoppel by judgment requires that there be identity of the parties, or their privies, and identity of the claim, demand, or cause of action in both proceedings. Where these factors are identical the final judgment in the former adjudication may be pleaded as a bar to subsequent proceedings, and if the judgment has been entered by a court of competent jurisdiction upon the merits of the case such a defense will be sustained. (*People v. Kidd* (1947), 398 Ill. 405, 408-09, 75 N.E.2d 851; *City of Elmhurst v. Kegerreis* (1945), 392 Ill. 195, 201, 64 N.E.2d 450.) The bar extends not only to what has actually been determined in the former proceedings but to any other matters properly involved by the subject matter which might have been raised and determined. (*Hughey v. Industrial Com.* (1979), 76 Ill. 2d 577, 583, 394 N.E.2d 1164; *Phelps v. City of Chicago* (1928), 331 Ill. 80, 85, 162 N.E. 119; *Baird & Warner, Inc. v. Addison Industrial Park, Inc.* (1979), 70 Ill. App. 3d 59, 64.) And where the estoppel properly applies, it operates without regard to whether the prior adjudication is correct or erroneous. *La Salle National Bank v. County Board of School Trustees* (1975), 61 Ill. 2d 524, 528-29, 337 N.E.2d 19, *cert. denied* (1976), 425 U.S. 936, 48 L. Ed. 2d 177, 96 S. Ct. 1668; *People ex rel. McAllister v. East* (1951), 409 Ill. 379, 383, 100 N.E.2d 746; *People v. Kidd* (1947), 398 Ill. 405, 409-10.

■■■ The last principle is based in the public necessity that disputes be resolved and ended. It is a fundamental principle of procedure that in law and equity a party must set out in his pleadings all of the grounds for recovery he may have. A plaintiff is not permitted to bring separate suits in piecemeal fashion on a claim or cause of action which is by its nature entire and indivisible. (*Wilson-Jump Co. v. McCarthy-Hundrieser & Associates* (1980), 85 Ill. App. 3d 179, 184, 405 N.E.2d 1322; *Ernest Freeman & Co. v. Robert G. Regan Co.* (1947), 332 Ill. App. 637, 645, 76 N.E.2d 514.) And he cannot maintain a subsequent suit after the loss of an earlier one based upon the same facts by the simple expedient of limiting the theories of recovery advanced in the pleadings of the first. (*Prochotsky v. Union Central Life Insurance Company* (1971), 2 Ill. App. 3d 354, 356, 276 N.E.2d 388.) Likewise, estoppel by judgment is founded on the desire for judicial economy and consistency and upon the equity of preventing the harassment of a defendant who has already come to the bar to answer for the entire matter concerned. *Baird & Warner, Inc. v. Addison Industrial Park, Inc.* (1979), 70 Ill. App. 3d 59, 64; *Consol Builders & Supply Co. v. Ebens* (1975), 24 Ill. App. 3d 988, 991, 322 N.E.2d 248; see *Angel v. Bullington* (1947), 330 U.S. 183, 192-93, 91 L. Ed. 832, 67 S. Ct. 657.

In the instant case, the traffic in pleadings and briefs must also end as an examination of the record makes clear. Succinctly stated, the appellants make three arguments why we should permit it to continue. They assert that (1) there has been no actual contest on the merits. Their rationale for this is that the controversy in *Morris I* ended in dismissal following a motion pursuant to section 45 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 45), which section concerns objections to pleadings; (2) that the instant pleadings present a different cause of action than those involved in the prior adjudication; and (3) that our judgment affirming the trial court in *Morris I* was erroneous because the defendant Union Oil improperly presented in argument a fact not of record in those proceedings.

■■ The last may be easily dismissed both in fact and in law. The Morrises suggest that the issue of whether producing wells existed within the boundaries of the tract concerned was placed in controversy in the former appeal to establish that the lease term had not expired. And they assert that an affidavit in the present record attesting to current production on the physical site somehow "admits" that such a "fact" was improperly injected into the prior proceedings. We are unable to follow this logic. Our decision here is in no way predicated on any fact alleged in that affidavit. Nor is the appellants' argument material for two reasons. First, it misapprehends the basis of decision in *Morris I*, both in the circuit court and on appeal. We there upheld a decision upon the pleadings directed at the legal sufficiency of the complaint. The latter failed to state a cause of action upon which relief could be granted, because when considered in conjunction with the material legal instruments submitted, namely the 1936 lease, the mineral reservation of 1957 and the 1968 unitization agreement, plaintiffs failed to allege the ultimate fact necessary to establish a cause of action. Because they could not or would not assert that production on the site had ceased, the court correctly determined that they had demonstrated no present possessory interest in the mineral estate. Appellants assert that if the fact of ongoing production was to be alleged, the defendants should have done so by way of a motion for summary judgment supported by affidavit. The assertion is immaterial because the proceedings never reached such a stage. The fatal flaw was rather plaintiffs' failure to state a cause of action. (*Morris v. Mayden* (1976), 35 Ill. App. 3d 338, 341-42.) *Johnson v. Nationwide Business Forms, Inc.* (1976), 41 Ill. App. 3d 128, 359 N.E.2d 171, and *James v. First Federal Savings & Loan Assoc.* (1974), 57 Ill. 2d 398, 312 N.E.2d 605, cited by the appellants, are clearly distinguishable from the facts at bar and further support a contrary outcome here. In those cases the respective trial courts improperly considered issues of fact in conection with motions attacking the legal sufficiency of the pleadings. As we have said, the record clearly demonstrates that the trial court in *Morris I* had no reason

to consider the issue of fact regarding ongoing production because its judgment was properly based upon the pleadings. Neither was such a fact material to our decision reviewing the judgment as is apparent from the face of the opinion. Second, the question of whether the decision in *Morris I* was erroneously based on the intrinsic consideration of an allegation of fact (which plaintiffs do not even now seek to contest) is absolutely immaterial to the present determination of the question of *res judicata*. The judgment is a valid bar, whether or not it was erroneously reached because it was entered by a court of competent jurisdiction on the merits. *E.g., People ex rel. McAllister v. East* (1951), 409 Ill. 379, 383.

■■ However, appellants challenge the conclusion that the former adjudication was based upon the merits. Both in fact and law this seems somewhat disingenuous. That the prior contest was not lost based on the pleadings was not the result of some formal hypertechnicality. It was the consequence of a series of objections, amendments, and refinements which in the end could not serve to persuade the trial court that the complainants could maintain an action. The question of the sufficiency of the allegations as a matter of law made the plaintiff's basis for recovery fully evident to the court and went directly to the equities of the case. There was a decision upon the merits. (*Elston-Damen Currency Exchange, Inc. v. Sheon* (1964), 46 Ill. App. 2d 218, 222, 197 N.E.2d 143.) Although *Elston-Damen* involved the application of estoppel by verdict, we believe the same principles apply to the present facts. (See also *Bonanno v. La Salle & Bureau County R. R. Co.* (1980), 87 Ill. App. 3d 988, 993, 409 N.E.2d 481; *Keim v. Kalbfleisch* (1978), 57 Ill. App. 3d 621, 624, 373 N.E.2d 565.) The plaintiffs suffered an involuntary dismissal. They cite Supreme Court Rule 273 (Ill. Rev. Stat. 1979, ch. 110A, par. 273), which dictates that such dismissal (barring failure of jurisdiction, venue, or the joinder of necessary parties) operates as an adjudication upon the merits. There is no consideration put forward by them now which persuades us that this rule does not apply. Dismissal with prejudice is deemed to be as conclusive of the rights of the parties as if the matter had proceeded to trial and had been resolved by final judgment adverse to the plaintiff. *Keim v. Kalbfleisch* (1978), 57 Ill. App. 3d 621, 624.

■■■ Additionally, the Morrises argues that the cause of action in the present case is not the same as that in their prior claim. They do not contest the fact that the parties are identical and the subject matter is identical. As we have stated, if the cause of action is genuinely different, then estoppel by judgment would not be a bar. The defendants alternatively urge that in such case estoppel by verdict would still be applicable. However, we believe that in law and in fact there is but one claim or cause of action here. For purpose of *res judicata* a cause of action is said to consist "* * * of the right belonging to the plaintiff for some wrongful act

or omission done by the defendant by which that right has been violated; the thing done or omitted to be done which confers the right upon the other to sue—that is, the act or wrong of the defendant against the plaintiff which caused a grievance for which the law gives a remedy." (*City of Elmhurst v. Kegerreis*, 392 Ill. 195, 205.) Thus a cause of action consists of a single core of operative facts which give the plaintiff a right to seek redress for the wrong concerned. Even though one group of facts may give rise to different claims for relief upon different theories of recovery, there remains a single cause of action. If the same facts are essential to the maintenance of both proceedings or the same evidence is needed to sustain both, then there is identity between the allegedly different causes of action asserted and *res judicata* bars the latter action. *Keim v. Kalbfleisch* (1978), 57 Ill. App. 3d 621, 624; *National Tea Co. v. Confection Specialties, Inc.* (1977), 48 Ill. App. 3d 650, 653-54, 362 N.E.2d 1150; *Pierog v. H. F. Karl Contractors, Inc.* (1976), 39 Ill. App. 3d 1057, 1060-61, 351 N.E.2d 249; see also *Engelhardt v. Bell & Howell Co.* (8th Cir. 1964), 327 F.2d 30, 32; *F. L. Mendez & Co. v. General Motors Corp.* (7th Cir. 1947), 161 F.2d 695, 696-97, *cert. denied* (1947), 332 U.S. 810, 92 L. Ed. 387, 68 S. Ct. 111.

■■ It is clear from the pleadings in these two proceedings that there is no material difference between what are allegedly two separate causes of action. In *Morris I* the complainants made a direct attack upon the unitization agreement—they sought its rescission in connection with the mineral estate, and requested an injunction against secondary recovery efforts affecting the estate along with damages for minerals already appropriated. Again, the plaintiffs seek to establish their superior interest in the same mineral estate. They make this effort upon the theory that they may properly maintain an action to quiet title, for ejectment, and for damages. All that has been substituted in a different theory of suit, but the underlying facts are identical, based upon the same instruments of title, the same agreements regarding production of oil and gas, and the same acts of the defendants. No additional facts are alleged in this second suit which present the changed circumstances which might otherwise give rise to a new and separate cause of action. The current theory of suit is no more than a substitution of labels.

Because of our determination of the appeal we find it unnecessary to address the issues presented by the cross-appeal. For all the reasons stated above, we affirm the decision of the circuit court of Clay County.

Affirmed.

JONES and KARNS, JJ., concur.