LOCAL 1006, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL–CIO, Thomas J. Byrnes, Juanita Jenkins, Margaret Hershberger, Robert Widlic, Gordon Doliber, Jr., William R. Rothman, Corrine Peters, Janet Kish, Arthur R. Strobeck, Jr., and Michael Calliouet, as Officers and Trustees of Local 1006, and Individually, and All Other Members of Local 1006 that are similarly situated,[1] Plaintiffs,

v.

Jerome WURF, a/k/a Jerry Wurf, Joseph Ames, Henry Bayer, Paul Booth, Christine George, Yette Hansen, Kim Pittman, Richard Wilson, the American Federation of State, County and Municipal Employees, AFL–CIO, Donald Johnson, Nolan B. Jones, I. Lawrence Richardson, Raymond Tillman, Peter Valone, William M. Bowling, and William J. Boys, Defendants.

No. 76 C 2744.

United States District Court, N.D. Illinois, E.D.

Nov. 10, 1982.

1. The plaintiffs' motion for class certification was denied on April 8, 1981.

Ellis E. Reid, Chicago, Ill., for plaintiffs.

Barbara Hillman, Cornfield & Feldman, Chicago, Ill., for union defendants.

Michael Hayes, Roger Flahaven, Asst. Attys. Gen., Chicago, Ill., for state defendants.

MEMORANDUM OPINION AND ORDER

WILLIAM T. HART, District Judge.

On the eve of trial of this old, complex, and hard-fought case, all of the defendants filed a joint motion for summary judgment.[2] They have submitted legal memoranda in support of their motion, with no accompanying affidavits. The plaintiffs have opposed the motion with their own legal memorandum, also unsupported by affidavit.

The Court has considered the filings, and because of the inadequacy of the briefs has done extensive research on its own. For the reasons stated below, defendants' motion for summary judgment is granted in part and denied in part.

### I. Background

The parties are at issue on plaintiffs' Third Amended Complaint, filed on April 10, 1979. The plaintiffs are ten individuals and a labor union, Local 1006 of the American Federation of State, County and Municipal Employees, AFL–CIO ("Local 1006"). The defendants include two groups: (1) seven individuals plus an international labor union, The American Federation of State, County, and Municipal Employees, AFL–CIO ("the International Union") (This first group is usually referred to as "the union defendants.")[3]; and (2) seven individuals who were employees or agents of the State of Illinois at the time of the events complained of in this action ("the state defendants"). The focus of the plaintiffs' action concerns the relationships in 1975–1976 among these three groups.

This single count Third Amended Complaint has been brought pursuant to the following statutes: 42 U.S.C. §§ 501–504, 1981, 1983, 1985(3), and 2000d. The plaintiffs also claim to be suing under the First, Fifth, and Fourteenth Amendments to the United States Constitution. They allege numerous facts and legal theories as grounds for recovery. Fed.R.Civ.P. 10(b) states in relevant part: "Each claim founded upon a separate transaction or occurrence ... shall be stated in a separate count ... whenever a separation facilitates the clear presentation of the matter set forth." Unfortunately, Rule 10(b) has not been followed here. It would have been an aid to counsel and to the Court had this rule been observed.

Nevertheless, the Court has studied the Third Amended Complaint and finds the gist to be as follows. Many of the members of Local 1006 were state employees working for the Illinois Bureau of Employment Security during the relevant period. The plaintiffs voiced numerous complaints to federal and state officials reflecting their beliefs that certain practices and procedures at the Bureau of Employment Security were in violation of federal law. Meanwhile, the relationships between and among the state, the International Union, and Local 1006 grew increasingly tense.

These growing tensions culminated in a strike by Local 1006 on July 7, 1976. On July 28, 1976, about 300 striking employees were suspended pending discharge by the State of Illinois. As part of a deal struck by the state and the International Union, most of those suspended were rehired a few months later, but some thirty-three employees, including the individual plaintiffs in this action, were discharged.[3a]

---

2. Certain defendants filed an earlier motion for summary judgment, but it was withdrawn on their own motion on February 12, 1980. At that time, they represented to the Court that "there do appear to be fact questions which could preclude summary judgment procedure."

3. One of the individual union defendants, Richard Wilson, was never served with process and on July 22, 1982, the Third Amended Complaint was dismissed without prejudice as to Wilson.

3a. The plaintiffs and defendants are not in agreement as to whether certain of the plaintiffs now before the Court—Jenkins, Doliber, Peters, and Kish—were discharged or were merely suspended. For purposes of deciding the motion for summary judgment, the Court treats the plaintiffs as discharged, though some or all of the four named above may subsequently have had their discharges converted to suspensions. Since defendants' motion for summary judgment is denied as to these four plaintiffs, the status of these four—which will be

Sometime prior to the strike, the state had declined to recognize Local 1006 as the bargaining representative for the employees in the Bureau of Employment Security, and instead gave such recognition to the International Union. On July 28, 1976—the same day the state began discharge proceedings against the striking employees—the International Union imposed an administratorship on Local 1006 and replaced the leaders of Local 1006 with persons of the International's choosing. The plaintiffs allege a complex conspiracy between the state defendants and the union defendants to abridge in various ways the plaintiffs' statutory and constitutional rights.

The Court believes that three basic grievances are alleged: (1) the individual plaintiffs were discharged from their employment due to the unlawful actions of the defendants; (2) the defendants, or at least some of them, were instrumental in the unlawful and improper refusal to recognize Local 1006 as the bargaining representative of its members; and (3) the union defendants, in concern with the state defendants, improperly imposed an administratorship on Local 1006, thereby stripping it of its power and its members of their political voices.

The defendants now argue that all these matters have been fully adjudicated to conclusion in other proceedings. First, the Illinois Civil Service Commission had hearings as to the propriety of the discharges of certain members of Local 1006, and the decisions were appealed to final judgments in the Circuit Court of Cook County and the Illinois Appellate Court. Second, the Illinois Office of Collective Bargaining held administrative hearings on the question of the certification of Local 1006 as the bargaining representative for numerous state employees. Finally, the propriety of the International Union's imposing an administratorship on Local 1006 was fully adjudicated before the Judicial Panel of the International Union itself.

The thrust of defendants' motion for summary judgment is that the principles of res judicata and collateral estoppel, as most recently articulated in *Lee v. City of Peoria,* 685 F.2d 196 (7th Cir.1982), clearly entitle them to summary judgment on plaintiff's Third Amended Complaint.

## II. Res Judicata

■ The defendants are correct that *Lee v. City of Peoria* and certain other recent cases hold that the principles of res judicata and collateral estoppel are to be applied to claims arising under the civil rights laws and the United States Constitution. *Lee v. City of Peoria* decided that these principles apply to actions brought under 42 U.S.C. §§ 1981, 1983, and 1985. *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982), held that these principles are applicable to Title VII actions. In recent years the Supreme Court has shown its approval of the application of res judicata and collateral estoppel to nearly all claims. *Kremer, supra; see also Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980).

This does not merely reflect a general philosophy of comity or even just plain good sense. Congress has embodied the principles of res judicata and collateral estoppel in 28 U.S.C. § 1738, which states in relevant part:

> The ... judicial proceedings of any court of any such State ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such States ...

The Supreme Court recently said that "though the federal courts may look to the common law or to the policies supporting res judicata and collateral estoppel in assessing the preclusive effect of decisions of other federal courts, Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." *Allen v. McCurry,* 449 U.S. at 96, 101 S.Ct. at 415. This Court is bound by statute to apply these principles where appropriate.

resolved at trial—does not affect the disposition of the instant motion.

■ The applicable standards have been clearly set forth in *Lee v. City of Peoria, supra* at 199:

> The doctrine of *res judicata* is that a final judgment on the merits in a court of competent jurisdiction bars the same parties or their privies from relitigating not only the issues which were in fact raised and decided but also all other issues which could have been raised in the prior action. *Cromwell v. County of Sac,* 94 U.S. 351, 24 L.Ed. 195 (1877); *Morris v. Union Oil Co. of California,* 96 Ill.App.3d 148, 51 Ill.Dec. 770, 421 N.E.2d 278 (1981). The essential elements of the doctrine are generally stated to be: (1) a final judgment on the merits in an earlier action; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits.

As stated above, the defendants argue that three prior adjudications correspond to the three causes of action which they find in the Third Amended Complaint, and that under the principles of *res judicata* and collateral estoppel the instant action is barred. The Court will address each argument in turn.

## A. The Discharges

Defendants argue that the propriety of these plaintiffs' discharges has been adjudicated through the administrative process and brought to final judgment in the courts. *See Strobeck v. Illinois Civil Service Commission,* 70 Ill.App.3d 772, 26 Ill. Dec. 911, 388 N.E.2d 912 (1st Dist.1979); and *Battle v. Illinois Civil Service Commission,* 78 Ill.App.3d 828, 33 Ill.Dec. 597, 396 N.E.2d 1321 (1st Dist.1979). If these adjudications are to bar even part of the Third Amended Complaint, the essential elements as set forth in *Lee v. City of Peoria* must be satisfied.

---

**4.** Donald Johnson also is a named defendant in this action.

**5.** The union defendants were not parties or in privity with parties to either the state administrative or state court proceedings, so they are unable to assert the bar of *res judicata.* Never-

## 1. Identity of Parties or Their Privies in the Two Suits

### a. The Defendants

■ The Court first looks to whether the defendants in the prior action and the instant action are the same. The Illinois Department of Labor, through Donald Johnson,[4] an employee of the Department, was the petitioner in both actions before the Illinois Civil Service Commission. The defendants before the circuit court and the appellate court in both *Battle* and *Strobeck* included the Illinois Civil Service Commission and the Illinois Department of Labor, both state entities. All of the state defendants in the instant action have been sued in their representative capacities as employees and/or agents of the state government. Therefore, the state defendants here may properly claim to be in privity with the state defendants in the earlier actions. *Sunshine Anthracite Coal v. Adkins,* 310 U.S. 381, 402–3, 60 S.Ct. 907, 916, 84 L.Ed. 1263 (1940) ("There is privity between officers of the same government so that a judgment in a suit between a party and a representative of the United States is *res judicata* in relitigation of the same issue between that party and another officer of the same government."); *Church of New Song v. Establishment of Religion on Taxpayers' Money,* 620 F.2d 648, 654 (7th Cir. 1980), *cert. denied sub nom. Theriault v. Establishment of Religion on Taxpayers' Money,* 450 U.S. 929, 101 S.Ct. 1387, 67 L.Ed.2d 361 (1981) (first and second suits brought against different employees of the federal bureau of prisons; defendants in both suits are in privity and therefore second defendants are able to assert *res judicata* as a bar); *Lee v. City of Peoria, supra,* at 199 n. 4; *Lambert v. Conrad,* 536 F.2d 1183, 1186 (7th Cir.1976).[5]

---

theless, for the reasons stated below, the disposition of the summary judgment motion on *res judicata* grounds as pertains to the state defendants is equally applicable to the union defendants. *See* Part II.A.4., *infra.*

## b. The Plaintiffs

Five of the twenty-three named plaintiffs in *Battle, supra,* are named plaintiffs in the instant action. Therefore, the defense of *res judicata* clearly may be asserted against these five plaintiffs (Byrnes, Hershberger, Rothman, Widlic, and Calliouet), since they are the identical parties as those in the previous action. Furthermore, the single plaintiff in *Strobeck* is also a plaintiff in the instant action and *res judicata* may be asserted against him as well.

The defendants also argue that the four plaintiffs in this action who were not plaintiffs in either *Battle* or *Strobeck* (Jenkins, Doliber, Peters, and Kish) are privies of the *Battle* and *Strobeck* plaintiffs, and therefore the claims of these four plaintiffs also may be barred by the principles of *res judicata*. This argument is devoid of merit and has absolutely no support whatsoever in the law.

These four plaintiffs are raising their individual statutory and constitutional claims which have never before even been presented to any tribunal, much less adjudicated on the merits to a conclusion. The basis for their claims here is that they were discharged in retaliation for their exercise of First Amendment rights, and/or for racially discriminatory reasons. It is inconceivable that they would be barred from raising their personal individual claims to freedom of speech and association, and the right to be free of discharge motivated by racial animus, because their present co-plaintiffs have received full adjudications on similar claims.

In support of their argument, which the Court believes to be frivolous,[6] the defendants cite *Chasteen v. Trans World Airlines,* 397 F.Supp. 269 (W.D.Mo.1974), *aff'd* 520 F.2d 714 (8th Cir.1975) (*per curiam* ). Defendants have argued that *Chasteen* should be applied to the instant case because it stands for the proposition that "plaintiffs need not be identical provided only that the rights of the plaintiff in the second cause are derivative of the rights of the named plaintiffs in the original administrative or judicial proceeding" (Brief in Support of Motion for Summary Judgment, at 3).

A reading of *Chasteen* does show that the bar of *res judicata* may be asserted against a plaintiff whose rights are derivative of a plaintiff in an earlier action. In *Chasteen,* Mojet Corporation had been the defendant in a state court condemnation proceeding brought by the City of Kansas City, Missouri. Keith Chasteen, the transferee of Mojet Corporation, attempted to relitigate as plaintiff in the federal action the propriety of the condemnation proceeding. The district court, affirmed by the United States Court of Appeals for the Eighth Circuit, found that *res judicata* was a bar to Chasteen. Chasteen's rights truly were derivative of Mojet's since he was Mojet's transferee.

The defendants have failed to explain how *Chasteen* is even arguably applicable to the instant case. The six plaintiffs who were parties in *Strobeck* and *Battle* have not transferred their rights under the civil rights laws and the United States Constitution to the four plaintiffs in this action who did not participate in the other cases. And these four plaintiffs cannot be said to have derived their rights from their co-plaintiffs. Merely stating the argument shows its absurdity.

A number of cases from this circuit and others—none of which have been mentioned by defendants—have considered the circumstances under which privity exists among plaintiffs for purposes of *res judicata*. Without exception, these cases hold that privity exists when assets and property rights are transferred. *See American Equipment Corp. v. Wikomi Manufacturing Co.,* 630 F.2d 544 (7th Cir.1980) (assets of Wikomi I, a Delaware corporation, assigned to Wikomi II, a Missouri corporation; privity exists between the corporations); *Schnitger v. Canoga Electronics Corp.,* 462 F.2d 628 (9th Cir.1972) (*per curiam* ) (purchase of property creates privity); *Brunswick Corp. v. Chrysler Corp.,* 408 F.2d 335 (7th Cir.

---

6. Counsel are advised to note Fed.R.Civ.P. 11.

1969) (sale of relevant business creates privity); *J.R. Clark Co. v. Jones & Laughlin Steel Corp.,* 288 F.2d 279 (7th Cir.), *cert. denied,* 368 U.S. 828, 82 S.Ct. 49, 7 L.Ed.2d 32 (1961) (sale of relevant assets creates privity). *Cf. Bloomer Shippers Association v. Illinois Central Gulf Railroad Company,* 655 F.2d 772 (7th Cir.1981).[7]

Not a single case has held that plaintiffs who assert rights guaranteed by the Constitution or civil rights granted by federal statutes are barred by the assertion in an earlier action of similar rights by others. *See Hampton v. City of Chicago,* 484 F.2d 602, 606 n. 4 (7th Cir.1973), *cert. denied,* 415 U.S. 917, 94 S.Ct. 1414, 39 L.Ed.2d 471 (1974) (Justice Stevens, then circuit judge) ("A finding in favor of defendants in [the previous state court] case is clearly no bar to this action [under §§ 1983 and 1985(3)] since none of these plaintiffs is a party to that judgment."); *Jeffries v. Swank,* 337 F.Supp. 1062, 1065 (N.D.Ill.1971) (§ 1983 action not barred by previous state court judgment: "[D]espite the fact that there is a final judgment in *Nelson* involving the same cause of action, plaintiffs here were not parties, successors to, in privity with, or represented by the parties in the state action."). *Cf. Roberts v. American Airlines,*

*Inc.,* 526 F.2d 757, 761 (7th Cir.1975), *cert. denied sub nom. Williams v. American Airlines, Inc.,* 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976). Defendants have presented not a shred of support for their position.[8]

In sum, the state defendants may assert the defense of *res judicata* against the plaintiffs Byrnes, Calliouet, Hershberger, Rothman, Widlic, and Strobeck. They may not assert this defense against the plaintiffs Jenkins, Doliber, Peters, and Kish.

### 2. Final Judgment on the Merits in the Earlier Action

*Battle* and *Strobeck* were litigated from the Illinois Civil Service Commission to the Circuit Court of Cook County to the Illinois Appellate Court. *Strobeck* was denied leave to appeal to the Illinois Supreme Court. The record before the Court does not indicate whether the plaintiffs in *Battle* sought leave to appeal to the Illinois Supreme Court. In any event, both *Strobeck* and *Battle* unquestionably proceeded to final judgment on the merits in courts of competent jurisdiction.[9] The second prerequisite for *res judicata* is satisfied.

---

7. The *Bloomer* court noted that some of the plaintiffs in the present litigation were not plaintiffs in the earlier action, and stated: "Assuming *arguendo* that their privity does not bar the additional plaintiffs under the doctrine of *res judicata,* they have no standing to assert [the violations which are the subject of the present action]." 655 F.2d at 777 n. 3. This appears to be a typographical error, and the Court believes the words "lack of" were intended to precede the word "privity." If the plaintiffs in the second action were in fact in privity with the plaintiffs in the prior action, the Court need not have reached the question of standing. Therefore, reading the missing words into this sentence of n. 3 also cuts against defendants' argument here.

8. In addition to noting what appears to be an attempt to mislead the Court into improperly relying on *Chasteen,* and the failure to cite controlling authority in this jurisdiction, the Court must note that the defendants have cited in their brief the case of *Harl v. City of LaSalle,* 506 F.Supp. 1067 (N.D.Ill.1980). This case was reversed by the Court of Appeals on May 24, 1982. 679 F.2d 123 (7th Cir.1982). The case which "changed the law" according to the de-

fendants and compelled the filing of the instant motion for summary judgment on the eve of trial, *Lee v. City of Peoria,* 685 F.2d 196 (7th Cir.1982), cites the reversal of *Harl* by the Court of Appeals. 685 F.2d at 198. It would seem that defendants' heavy reliance on *Lee v. City of Peoria* would have alerted them to the fact that *Harl* had been reversed 2½ months earlier.

9. The Court notes that the hearing officers of the Illinois Civil Service Commission heard two days of testimony in *Strobeck* and eighteen days in *Battle.* Witnesses testified and were subject to cross-examination. Documents were offered and admitted into evidence.

The hearing officer in *Strobeck* submitted to the Commission a 76 paragraph, 12 page document, containing Findings of Fact and an Analysis. The Commission "read and examined the proofs, oral, documentary, and written, ... together with the records and the findings and rulings" of the hearing officer, and adopted the hearing officer's report with the exception that it rejected his Recommended Decision.

The hearing officer in *Battle* submitted to the Commission a 479 paragraph, 184 page docu-

### 3. Identity of the Cause of Action in the Earlier and Later Actions

■ The crucial question in deciding most *res judicata* issues is whether the cause of action asserted in the second suit is the same cause of action as that asserted in the prior one. The standard rule is that " 'a cause of action consists of a single core of operative facts which give the plaintiff a right to seek redress for the wrong concerned.' " *Lee v. City of Peoria,* 685 F.2d at 200, quoting *Morris v. Union Oil Co. of California,* 96 Ill.App.3d 148, 157, 51 Ill.Dec. 770, 777, 421 N.E.2d 278, 285 (1981). Therefore, the Court must determine the core of operative facts which gives these plaintiffs a right to seek redress.

#### a. The Earlier Action

The core of operative facts in *Strobeck* and *Battle* is the same. The plaintiffs were state employees of the Illinois Department of Labor, in the Bureau of Employment Security. All were members and officers of Local 1006. All participated in the strike which began July 7, 1976.

On July 13, 1976, the state suspended pending discharge those employees who had been absent for five consecutive work days. Meetings were held on July 16 at the Hyatt Regency Hotel and July 23 at the Midland Hotel. The purpose of the meetings, which were not considered formal pre-suspension hearings, was to interview the striking employees concerning their reasons for the absences from work. The employees were permitted to have union or legal representatives present at the meetings as observers, but these representatives were not permitted to participate as formal advocates.

The state defendants had compiled a chart listing those employees who, in the opinion of the state, had instigated the strike or engaged in picket line misconduct. On July 28, 1976, the state initiated discharge proceedings against all employees who had been absent from work for more than five consecutive days. Approximately 300 employees were discharged initially. However, as the result of a settlement agreement worked out by the state and the International Union, most of the discharged employees had the discharges converted to suspensions. Thirty-three employees, including the six employees who were plaintiffs in *Strobeck* and *Battle* and who are plaintiffs in this action, remained discharged because the chart formulated by the state pegged them as instigators of the strike and/or as having engaged in picket line misconduct.

The legal theories presented by these six plaintiffs to some extent overlapped. Strobeck claimed that his discharge deprived him of the equal protection of the laws in that some striking employees were discharged finally, while others were allowed to return to work. He also claimed that his discharge for engaging in the strike was not proper. The *Battle* plaintiffs raised the equal protection and propriety of discharge arguments as well as others, including: deprivation of due process because they were denied legal representation; deprivation of due process because the strike was instigated through a conspiracy between the state and the International Union; and the discharges for participation in the strike

ment, containing Findings of Fact and an Analysis. The Commission reviewed the report and all the evidence submitted, and adopted it in toto.

It is absolutely clear to this Court that given these procedures, *cf. Davis v. U.S. Steel Supply,* 688 F.2d 166, 172 n. 7 (3d Cir.1982) (*en banc*), the Illinois courts would give preclusive effect to the final judgments entered by the Illinois Appellate Court.

Though the employees were styled as "Respondents" and the state as "Petitioner" in the proceedings before the Illinois Civil Service Commission, in fact it was the employees who requested that hearings be held (*see* Report of

hearing officer in *Strobeck,* Par. 5; Report of hearing officer in *Battle,* Par. 27). Nevertheless, even if the plaintiffs in this action were seen as "defendants" in the prior action, the preclusive effect given to the prior action would be the same. *Cf. Davis v. U.S. Steel Supply, supra,* at 176 n. 12; and 178 (Garth, J. concurring) ("Thus, at least to me, it is now evident that § 1738 bars a federal proceeding which seeks to litigate the same discriminatory actions adjudicated in a prior state court proceeding, even though it was not the plaintiff who chose the state court forum."); *Chasteen, supra.*

were retaliations for the exercise of First Amendment rights.[10]

### b. The Later Action

The core of operative facts implicated by the Third Amended Complaint relevant to the discharges is as follows. The plaintiffs in this action were duly elected officers and trustees of Local 1006 (Par. 3). Local 1006, on behalf of its members, had vigorously advocated its point of view to state officials (Par. 19). The plaintiffs complained to the United States Department of Labor of alleged mismanagement by the state defendants of the Illinois Bureau of Employment Security (Par. 23). Local 1006 called a strike on July 7, 1976 to protest alleged discriminatory discharges of employees, based on race and sex, by the state (Par. 25). On July 13, 1976, the state suspended all those who participated in the strike (Par. 27).

The state and union defendants, acting independently and in concert, sought the following: to deprive the plaintiffs of rights to employment for racial or political reasons and as retaliation for the plaintiffs' union activities (Par. 36.a.); to deny plaintiffs their rights of free speech and association (Par. 36.b.); to deprive the plaintiffs of their property rights without due process of law (Par. 36.d.); and to deny the plaintiffs the equal protection of the law (Par. 36.e).

The Third Amended Complaint lists various overt acts committed by the defendants in furtherance of their unlawful intent: the discharge of the plaintiffs and other participants in the strike (Par. 38.a.); the precipitation of the strike by the state (Par. 38.d.); the settlement of the strike through an agreement between the state and the union defendants to refuse reinstatement to those employees charged with having instigated the strike (Par. 38.j.); and the holding of meetings at downtown Chicago hotels for purposes of interviewing the strikers, at which meetings the state defendants denied the right of formal legal or union representation to the strikers (Par. 38.m.).

### c. Identity of the Actions

The Court has carefully reviewed and considered the operative facts which formed the basis of the claims before the Illinois Civil Service Commission, the circuit court, and the appellate court, and has compared them with the operative facts presented in the plaintiffs' Third Amended Complaint. On the issue of the discharges of the plaintiffs, the core of operative facts is the same. In sum, the plaintiffs were active members of Local 1006, they spoke out against state policies, they went on strike, they were accused of being instigators of the strike, and they were discharged.

These causes of action are identical. There have been final judgments by courts of competent jurisdiction on these claims of these six plaintiffs. The requisite identity of the parties or their privies has been shown. Therefore, the doctrine of *res judicata* as mandated by 28 U.S.C. § 1738 bars these six plaintiffs "from relitigating not only the issues which were in fact raised and decided but also all other issues which could have been raised in the prior action." *Lee v. City of Peoria, supra,* at 199.

■ There are several wrinkles presented by *Strobeck* and *Battle* which the Court feels compelled to discuss. In *Strobeck,* the court did not explicitly discuss the issue of the plaintiff's First Amendment rights, simply stating: "We further believe that the discharge [of plaintiff] was appropriate." 26 Ill.Dec., at 916, 388 N.E.2d, at 917. First, this Court believes that the Illinois Appellate Court could not have found the discharge to be appropriate if the plaintiff had been discharged as retaliation for the exercise of his rights of free speech and association. *Cf. Lee v. City of Peoria, su-*

---

10. Certain other defenses were urged which relied on the interpretation and application of state administrative procedures. Since these defenses are irrelevant here, they are ignored.

*Lee v. City of Peoria* teaches that the legal theories argued by plaintiffs do not determine whether there is one, or more than one, cause of action. Rather, it is the core of operative facts which is determinative, no matter how many legal theories may be presented to support a recovery under the same facts.

*pra,* at 200–201 ("It does appear to us that if in fact he had been discharged solely because of racial discrimination he was not in fact or in law discharged because of the false testimony. This would have been a complete defense.").

Second, the dissenting opinion of Justice Perlin shows that the issue of the constitutionality of Strobeck's discharge was clearly before the court. He states: "I respectfully dissent . . . It is true that a public employee does not have a constitutional right to public employment; however, such employee cannot be barred or removed from that employment arbitrarily or in disregard [f]or his or her constitutional rights. (*Dendor v. Board of Fire & Police Comm'rs.,* (1st Dist.1973) 11 Ill.App.3d 582, 588–89, 297 N.E.2d 316.)" In *Dendor,* the court found that the discharge of a fireman for making complaints critical of his superiors violated the plaintiff's First Amendment rights. By citing *Dendor,* Justice Perlin showed that the issue of Strobeck's exercise of First Amendment rights clearly was before the court.[11] The finding that the discharge of Strobeck was appropriate therefore included a finding that his rights of free speech and association had not been infringed.

In the case before this Court the plaintiffs have not pressed an argument that they were fired due to racial animus, though the Third Amended Complaint does seem to infer such a charge. The *Strobeck* court, by implication, disposed of this issue as well. In response to Strobeck's equal protection argument, the court noted that his claim "does not involve the consideration of any suspect classifications." 26 Ill. Dec. at 915, 388 N.E.2d at 916. Race, of course, is a suspect classification. *Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967). Therefore, the court in *Strobeck* recognized that plaintiff had not presented a claim of racial discrimination. Of course, he is barred from doing so now by *res judicata* since it clearly was an

issue he could have raised in the prior proceedings.

The *Battle* court faced head-on the plaintiffs' claims of denial of due process for failure to allow legal representation, the equal protection argument similarly urged by Strobeck, and the claim that the discharges were in retaliation for the exercise of the plaintiffs' First Amendment rights. All were rejected. As the court stated, the plaintiffs "were discharged for participating in an illegal work stoppage (*Strobeck*) and not for the exercise of their first amendment rights." 33 Ill.Dec. at 604, 396 N.E.2d at 1328.

However, the *Battle* plaintiffs had also raised a due process challenge claiming that "the State and the International Union conspired to oust selected local union officials who were not supportive of the International Union president." *Battle, supra,* 33 Ill. Dec. at 601, 396 N.E.2d at 1325. The appellate court refused to pass on this due process conspiracy theory because it had not been raised before the Illinois Civil Service Commission.

On first blush, this might seem to show that the plaintiffs in *Battle* had not been permitted a full and fair opportunity to litigate the question of a conspiracy between the state and the union defendants to discharge the leaders of Local 1006. This alternative discharge claim, if such it is, fails on any of three grounds.

■ First, the principles of *res judicata* require that all claims be brought when they emerge from the same set of operative facts. The particular facts brought by the plaintiffs in *Battle* before the Illinois Civil Service Commission dealt with the propriety of the discharge of these plaintiffs. If the state and union defendants conspired to deprive the plaintiffs of their First Amendment rights by discharging them, this was another claim which should have been presented to the Illinois Civil Service Commission. The failure to raise it means that it cannot be raised in another proceeding.

---

11. It should be noted that the issue of Strobeck's First Amendment rights was explicitly mentioned by the hearing officer of the Illinois Civil Service Commission. *See* Report of hearing officer, Par. 74.

■ Second, the appellate court clearly found that the plaintiffs were discharged for participating in an illegal strike, "and not for the exercise of their first amendment rights." 33 Ill.Dec. at 604, 396 N.E.2d at 1328. An alleged conspiracy between the state and the International Union to punish the plaintiffs for the exercise of their First Amendment rights which did not in fact so punish them is not actionable: their injuries were not proximately caused by the alleged illegal acts of the defendants. Furthermore, just as in *Lee v. City of Peoria* and, by implication, *Strobeck,* the court could not have found the discharges to be proper and not unconstitutional if they were the products of such illegal acts.

Third, it is unclear from the single sentence quoted above from the opinion of the Illinois Appellate Court whether the word "oust" was meant to apply to the discharges from employment, or the removal from union office. However, the ambiguity disappears upon looking at two things. First, the hearing officer clearly heard testimony and made findings going to plaintiffs' discharge conspiracy claim:

> ... On cross-examination, Tillman [a state employee and a defendant in this action] denied that Ken Pitman [sic: should read Kim Pittman, a defendant in this action], another representative of the main office of the American Federation of State, County, and Municipal Employees Union [,the International Union,] decided which leadership in the eyes of Mr. Pitman and other labor representatives should not be returned to work. In making their decisions to discharge, the management of the Bureau of Employment Security received no input whatsoever from the individuals on the labor side· of the table. There were never any hidden meetings or secret meetings with labor

representatives to discuss who should and who should not be discharged.

Report of hearing officer, Par. 230. Second, the court itself clearly focused on the basis for the alleged conspiracy: "Under the compromise agreement between the Department of Labor and the International Union, all but 33 of the dismissed employees had their discharges converted into suspensions." 33 Ill.Dec. at 601, 396 N.E.2d at 1325. *See also* Report of hearing officer, Par. 345, describing the settlement agreement itself. So the discharge conspiracy claim was presented and adjudicated.

■ It should be noted, as discussed below, that all of the plaintiffs will be permitted to proceed in this Court with a cause of action alleging a conspiracy between the state and union defendants to replace the leadership of Local 1006 by the imposition of an administratorship on Local 1006. They will be able to argue that such an ouster violated their rights of free speech and association. *Res judicata* will not bar this different cause of action.

### 4. The Union Defendants

■ The union defendants were neither parties nor in privity with parties to the prior actions and therefore cannot assert the defense of *res judicata.* While theoretically they might be permitted to assert the defense of collateral estoppel as to the issues actually litigated and decided which were necessary to the judgment,[12] *see Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), in this case they may merely ride the coattails of the state defendants.

An argument that the six plaintiffs were discharged by the state solely because of the action of the union defendants—and

---

12. The defendants have, in an offhand way, stated that their motion for summary judgment is based on "the doctrines of *res judicata* and collateral estoppel" (Brief in Support of Motion for Summary Judgment, at 2). They have not shown how the principles of collateral estoppel (issue preclusion), as opposed to *res judicata* (claim preclusion), are to be applied here. The Court has not been advised of which issues in

the prior actions were litigated, actually decided, and necessary to the decisions. The defendants have not carried their burden on the issue of collateral estoppel as to any cause of action in the Third Amended Complaint. Therefore, the motion for summary judgment resting on the defense of collateral estoppel is denied as to all issues.

without the involvement of the state defendants—finds no support in the Third Amended Complaint or in logic. If the state defendants can successfully urge *res judicata* against some of the claims brought by these six plaintiffs, the union defendants will receive the benefits as well.

### 5. Conclusion

The state defendants have met the three requirements for establishing the prior state court judgments as a bar on the issue of discharge. These six plaintiffs may not again litigate the propriety of their discharges. As to this cause of action urged by these six plaintiffs, summary judgment is granted for the defendants.[13]

### B. Denial of Representative Bargaining Status to Local 1006

The second claim stated in the Third Amended Complaint deals with the representative status of Local 1006. The plaintiffs allege that Local 1006 had been the historical collective bargaining representative of all employees in the Illinois Department of Labor, and had vigorously advocat-

ed its point of view to the state defendants (Par. 19). The International Union made political contributions to the election campaign of Governor Walker, but these contributions were opposed by the plaintiffs (Par. 34). Contrary to the provisions of an executive order issued by Governor Walker, the defendants denied historical recognition to Local 1006 (Par. 21). Instead, the state granted representative status to the International Union (Par. 22).

The plaintiffs complain that these decisions were made in retaliation for their advocating unpopular views to state officials, were motivated by racial animus, and/or denied them the equal protection of the law. A liberal reading of the Third Amended Complaint reveals plaintiffs' claim that the denial of representative status to Local 1006 was the product of an alleged conspiracy between the state defendants and the union defendants.

The defendants now argue that proceedings held before the Illinois Office of Collective Bargaining, which resulted in a denial of bargaining representative status for Local 1006, bar the plaintiffs in this action

---

**13.** The Court is aware that two statements made by Judge Decker in an earlier opinion in this case may seem to be inconsistent with the Court's decision today. *See Memorandum Opinion and Order* of October 26, 1977. There, Judge Decker stated: "At the minimum, the state case now pending will determine whether the dismissal of the striking employees was proper under Illinois law. A decision that the dismissals were proper would have no effect on this case. As discussed above, the court has already concluded that engaging in an illegal strike is a valid grounds [sic] for dismissal of a public employee. The only question remaining is whether the state can demonstrate that it relied only on constitutionally permissible grounds for dismissal" (slip opinion, at 5–6). Second, in response to the defendants' argument that the conspiracy theory would be decided by the state courts, Judge Decker stated: "The International is not a party to the state proceedings. Thus, it is not clear at this point that the conspiracy theory will receive a full hearing in state court" (slip opinion, at 7).

Several things must be noted. First, the context in which Judge Decker made these statements was a decision denying defendants' motion that the court abstain from deciding this case for reasons of "federalism, comity and estoppel." Judge Decker carefully considered the abstention law and decided that it would

not be appropriate in this case. In following *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), he stated: "The Supreme Court, addressing this question recently for the first time, said that the federal courts have a duty to exercise their jurisdiction when properly invoked, and that ordinarily both cases should proceed independently, with the first case going to judgment becoming *res judicata* in the other" (slip opinion, at 8). Insofar as defendants' motion is granted as to some of the plaintiffs on one of the claims, that is exactly what has happened: the Court has exercised its jurisdiction, and the first case has become *res judicata* of the second. As shown above, the state courts did pass on the question of the constitutionality of the dismissals.

Second, as noted above the plaintiffs will be able to pursue the conspiracy claim based on the imposition of the administratorship by the union defendants. Since as Judge Decker had predicted that conspiracy theory did not receive a full hearing in state court, the plaintiffs will be able to present it here as it touches the alleged ouster of the leadership of Local 1006. However, as it implicates the discharge of the six plaintiffs from their jobs, the conspiracy theory is barred.

from litigating the right of Local 1006 to represent them. For the reasons stated below the defendants wholly fail to meet their burden, and their motion for summary judgment is denied on this claim.

The defendants have merely stated that proceedings were held before the Illinois Office of Collective Bargaining relevant to the status of Local 1006 as the collective bargaining representative of various state employees. They have not tendered to the Court any documents which explain the scope of these proceedings, the procedures employed, the parties who participated, or the precise outcome. However, they have admitted that the results of the proceedings were not affirmed by a state or federal court. They argue that since the plaintiffs were entitled to appeal the decisions of the Illinois Office of Collective Bargaining via a common law writ of certiorari, *see People ex rel. Elmore v. Allman,* 382 Ill. 156, 46 N.E.2d 974 (1943), the administrative proceedings should be given preclusive effect.

The defendants are correct that under some circumstances, proceedings before an administrative agency may be given *res judicata* effect in subsequent litigation. *See United States v. Utah Construction Co.,* 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966); *Lee v. City of Peoria,* 685 F.2d 196, 198 (7th Cir.1982). The Supreme Court has set out the general standards: "When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose." *Utah Construction, supra,* at 422, 86 S.Ct. at 1560.[14]

Other courts have construed the "judicial capacity" and "adequate opportunity to litigate" standards of *Utah Construction* and have enumerated the basic prerequisites for the application of *res judicata* and/or collateral estoppel principles to administrative decisions: "[T]he minimum procedures . . . include [ ] a full hearing; representation by counsel; a full opportunity to present evidence; and the right to call, examine, and cross-examine witnesses." *Moore v. Bonner,* 526 F.Supp. 143, 147 (D.S.C.1981), relying on *Painters District Council No. 38 v. Edgewood Contracting Co.,* 416 F.2d 1081 (5th Cir.1969).

An examination of the procedures employed at the administrative level is the first prerequisite in determining the preclusive effect to be given an administrative proceeding. The second question is whether the state court itself would hold that the administrative proceeding should be given such effect. This requirement is mandated by 28 U.S.C. § 1738.

In *Bowen v. United States,* 570 F.2d 1311 (7th Cir.1978), the court found that the Indiana courts would give preclusive effect to an administrative decision of the National Transportation Safety Board. In *Blackhawk Heating and Plumbing v. Seaboard Surety Company,* 534 F.Supp. 309, 317 (N.D. Ill.1982), Judge Getzendanner followed the principles of *Bowen v. United States.* She stated that though the Illinois courts seemed not to have ruled on the preclusive effect of administrative decisions, she would follow the Seventh Circuit's *Bowen* decision and find that Illinois courts would give preclusive effect to administrative decisions of the General Services Board of Contract Appeals.

The defendants now claim that preclusive effect should be given by this Court to decisions of the Illinois Office of Collective Bargaining. The defendants claim must fail. The Court has not been apprised of the procedures employed by the Office of Collective Bargaining nor of the opportunity of the plaintiffs to litigate their claims. The standards of *Utah Construction* have not been satisfied.

Furthermore, defendants have not pointed to a statutory right of appeal of the decision of the Office of Collective Bargain-

14. *Utah Construction* employed principles of collateral estoppel (issue preclusion) rather than *res judicata* (claim preclusion), and most cases following *Utah Construction* also seem to be collateral estoppel cases. For purposes of deciding the instant motion, the Court assumes that administrative proceedings may be given both collateral estoppel and *res judicata* effect.

ing. The Court has found no case where preclusive effect was given to an administrative proceeding where the plaintiff had not been given a statutory right of review. *Cf. Bowen v. United States, supra; Blackhawk Heating, supra; Snow v. Nevada Department of Prisons,* 543 F.Supp. 752 (D.Nev.1982); *Gear v. City of Des Moines,* 514 F.Supp. 1218 (S.D.Iowa 1981). The assertion by the defendants that the vehicle of a common law writ of certiorari would allow judicial review of the decision of the Office of Collective Bargaining is insufficient.

■■■ Second, defendants have not (and cannot) point to any decision holding that a hearing before the Illinois Office of Collective Bargaining should be given preclusive effect. This Court will not expand the principles of *Bowen* and *Blackhawk* without a showing that "the courts of the State from which the judgment emerged would" give the prior proceedings preclusive effect. *Allen v. McCurry,* 449 U.S. at 96, 101 S.Ct. at 415.

In conclusion, the defendants have presented not even a colorable claim that the administrative proceedings before the Office of Collective Bargaining should preclude the plaintiffs in this cause from litigating a cause of action relative to the right of Local 1006 to receive historical recognition as the bargaining representative of certain Illinois State employees. Defendants' motion for summary judgment on the claim of the denial of collective bargaining representative status to Local 1006 is denied.

### C. Imposition of an Administratorship on Local 1006

■■■ Plaintiffs also complain that the state and union defendants conspired to replace the leadership of Local 1006 by imposing an administratorship upon Local 1006, and claim that this conspiracy deprived them of their civil rights guaranteed by statute and the United States Constitu-

tion.[15] The propriety of the imposition of this administratorship is the third cause of action presented in the Third Amended Complaint.

The basis for defendants' *res judicata* claim as to this cause are proceedings held before the Judicial Panel of the International Union. The transcripts of the hearings before the Judicial Panel, which determined that the imposition of the administratorship was proper under the International Union constitution, have been submitted as exhibits to the Court. However, defendants again have failed to meet the standards required by *Utah Construction.*

The transcripts do seem to indicate that the plaintiffs were entitled to representation by counsel, cross-examination of witnesses, and reasonable procedures allowing them a full hearing. However, there is no suggestion that the administrative proceedings undertaken by the International Union, one of the defendants in this action, could be reviewed by an Illinois court. Furthermore, again the defendants have presented no legal authority to show that an Illinois court would give preclusive effect to these proceedings by a private organization.

In addition, it would seem somewhat peculiar for this Court to give preclusive effect to the proceedings before the International Union in light of the plaintiffs' claims that the state and the International Union conspired, using sham proceedings, to impose an administratorship on Local 1006. Defendants' motion for summary judgment as to the imposition of the administratorship is denied.

### III. Assorted Statutory Claims

The defendants also move for summary judgment claiming that the plaintiffs cannot satisfy the requirements of the various statutes pursuant to which they have brought this action. The arguments presented by the defendants seem as if they

**15.** The following paragraphs and subsections of the Third Amended Complaint deal with the allegations relevant to the administratorship:

5, 6, 10, 28–33, 36.f., and 38.b., c., g., h., i., n., s., t., u.

should have been set forth in a motion to dismiss when the Third Amended Complaint was filed on April 10, 1979. It should be noted that the defendants have not supported this ground for summary judgment with affidavits, interrogatory answers, deposition transcripts, or any other matter called for in Fed.R.Civ.P. 56(c). The Court will resolve at trial the questions of whether plaintiffs have met their burdens under the applicable statutes.

## IV. Conclusion

The defendants are granted summary judgment on the cause of action brought by plaintiffs Byrnes, Calliouet, Hershberger, Rothman, Widlic, and Strobeck, complaining of their discharges. All issues raised by these individuals in the prior adjudications, and all issues which could have been raised, are barred. Defendants' motion for summary judgment is denied as to the cause of action brought by plaintiffs Jenkins, Doliber, Peters, and Kish complaining of their own discharges.

Defendants' motion for summary judgment is denied as to the causes of action complaining of the denial of collective bargaining representative status for Local 1006, and of the imposition of an administratorship upon Local 1006.

The issues left open for trial are:

(1) whether the discharges of the plaintiffs Jenkins, Doliber, Peters, and Kish deprived them of property without due process, denied them the equal protection of the laws, and/or were motivated either by racial animus or were effected in retaliation for the exercise of their First Amendment rights; and if so, the extent of the involvement of the state and union defendants in causing such discharges;

(2) whether the denial of collective bargaining representative status to Local 1006 deprived Local 1006 and/or the individual plaintiffs of property without due process, deprived them of the equal protection of the laws, and/or was motivated either by racial animus or the desire to retaliate against them for the exercise of their First Amendment rights; and if so, the extent of

the involvement of the state and union defendants in causing such denial; and

(3) whether the imposition of an administratorship by the International Union upon Local 1006 deprived Local 1006 and/or the individual plaintiffs of property without due process, deprived them of the equal protection of the laws, and/or was motivated either by racial animus or the desire to retaliate against them for the exercise of their First Amendment rights; and if so, the extent of the involvement of the state and union defendants in causing such imposition.

The parties are ordered to plan their presentation at trial in accordance with this Memorandum Opinion and Order.

IT IS SO ORDERED.