Phyllis **ROTERT**

v.

**JEFFERSON FEDERAL SAVINGS AND LOAN ASSOCIATION.**

**Civ. No. N–84–300(JAC).**

United States District Court,
D. Connecticut.

Dec. 13, 1985.

---

Eugene N. Sosnoff, New Haven, Conn., for plaintiff.

Paul E. Knag, Hartford, Conn., for defendant.

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

JOSÉ A. CABRANES, District Judge:

This action alleging wrongful discharge from employment is before the court on the defendant's motion for summary judgment.[1] The defendant asserts

---

1. The defendant filed a motion to dismiss ac-    companied by an affidavit and a statement of

that the plaintiff's federal claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634, is precluded by the doctrine of collateral estoppel based on a prior administrative decision adverse to the plaintiff that ultimately was affirmed by a state court.

## I.

Phyllis Rotert ("the plaintiff") was employed by the Jefferson Federal Savings and Loan Association ("the defendant") from April 1958 to October 1982. Complaint (filed May 9, 1984) at ¶¶ 5–6. Her final position was as a "mortgage processing officer" assigned to the defendant's Meriden, Connecticut, office. *Id.* at 7.

The 59-year-old plaintiff was informed by her superiors, on or about October 7, 1982, that her duties had been changed to those of a "loan consultant" and that she would thereafter be assigned to the defendant's office in Wallingford, Connecticut. *Id.* at 10. She was advised that her title and salary would remain the same and that she would be compensated for her travel expenses. Statement of Material Facts in Support of Defendant's Motion to Dismiss (filed June 21, 1984) ("Statement") at ¶ 2. The plaintiff's duties at the Meriden office were to be assigned to a younger employee. Complaint at ¶ 12. The plaintiff, after protesting the change in her duties and location, terminated her employment with the defendant on or about October 7, 1982. Statement at ¶ 4.

The plaintiff subsequently filed a claim for unemployment compensation with the Employment Security Division of the Connecticut Department of Labor ("the Division"). An examiner designated by the Administrator of the Division evaluated the plaintiff's claim and found her ineligible for unemployment benefits. *Id.* at ¶ 5.

The plaintiff's appeal from the examiner's decision was heard by an appeals referee on or about February 1, 1983. *Id.* at ¶ 6. The appeals referee upheld the denial of benefits on the ground that the plaintiff had left suitable work voluntarily and without sufficient cause. *Id.* The decision was again affirmed by the Employment Security Board of Review on March 24, 1983, and by the Superior Court of Connecticut on October 31, 1983. *Id.* at ¶¶ 7–10. *See Rotert v. Administrator, Employment Security Fund,* Docket No. 32–74–45, slip op. at 3 (Super.Ct., Jud.Dist. of New Haven, Oct. 31, 1983). The plaintiff did not appeal the decision of the Superior Court. Statement at ¶ 11.

The plaintiff filed her complaint in this action on May 9, 1984, alleging that the defendant had engaged in unlawful age discrimination by attempting to transfer her to a new position and thereby forcing her to terminate her employment. The plaintiff contended that these actions by the defendant constituted a constructive discharge.

The defendant subsequently filed a motion to dismiss and an accompanying memorandum, asserting that the plaintiff's federal claim was barred by the doctrine of collateral estoppel based on the decision of the Division that ultimately was affirmed · by the state Superior Court.[2] The plaintiff counters that the doctrine of collateral estoppel is not applicable in these circumstances because "the subject of age discrimination and the other claims for relief were never mentioned or otherwise dealt with" in the earlier proceedings. *See* Plaintiff's Brief in Opposition to Motion to Dismiss (filed Sept. 7, 1984) at 1. Oral argu-

---

material facts in support of defendant's motion to dismiss pursuant to Rule 9(c), Rules of Civil Procedure (D.Conn.). Because Rule 9(c) applies only to summary judgment motions and because both parties have introduced matters outside the pleadings, the court determined that the Motion to Dismiss ought to be treated as a motion for summary judgment under Rule 56, Fed.R.Civ.P.

**2.** The defendant also contends that the plaintiff's state law claims must fail for the same reasons as must her federal claims and, alternatively, because they fail to state claims under state law and because the court ought not to exercise pendent jurisdiction over them.

ment on the defendant's motion was thereafter heard by the court. Accordingly, the matter is now ripe for decision.

## II.

A federal court is required by 28 U.S.C. § 1738 to afford the same full faith and credit to state court judgments as would the state's own courts. *See, e.g., Kremer v. Chemical Construction Corporation,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982) (federal court must give preclusive effect in Title VII suit to state court decision upholding state administrative agency's rejection of employment discrimination claim as meritless when state court decision would be *res judicata* in state's own courts). Consequently, the court in *Knox v. Cornell University,* 30 EPD ¶ 33,353 (N.D.N.Y. July 14, 1982) (Miner, J.), found that the decision of a state unemployment referee, upheld by a state court, that the plaintiff "lost his employment as a direct result of his own misconduct" would have precluded the plaintiff from relitigating the reason for his termination in a state employment discrimination suit and therefore would also preclude his relitigating that issue in his federal Title VII suit.

It appears that the Connecticut courts have never considered whether issues decided by the Division, and affirmed on appeal by the Superior Court, may be relitigated in a subsequently filed lawsuit alleging employment discrimination. Accordingly, the court must attempt to predict how the Connecticut courts would rule on this issue in light of their prior pronouncements on the doctrine of collateral estoppel. *See generally Commissioner of Internal Revenue v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967) (federal district courts that are required to apply state law must, in the absence of a ruling on the subject by the state's highest court, "apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the state").

The Connecticut Supreme Court has observed that

[c]ollateral estoppel, or issue preclusion, is that aspect of res judicata which prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties on a different claim.

*In re Juvenile Appeal (83–DE),* 190 Conn. 310, 316, 460 A.2d 1277 (1983), *citing State v. Aillon,* 189 Conn. 416, 424 n. 8, 456 A.2d 279, *cert. denied,* 464 U.S. 837, 104 S.Ct. 124, 78 L.Ed.2d 122 (1983). *See also Corey v. Avco-Lycoming Division,* 163 Conn. 309, 307 A.2d 155 (1972), *cert. denied,* 409 U.S. 1116, 93 S.Ct. 903, 34 L.Ed.2d 699 (1973) (arbitrator's decision that employer had not discriminated against employee because of her religion precluded employee from relitigating that issue in administrative proceedings under state Fair Employment Practices Act).

Accordingly, the plaintiff's ADEA claim ought to be dismissed on the basis of collateral estoppel only if three conditions are satisfied: (1) an issue that is potentially determinative of the current claim must have been "actually litigated" in the earlier proceedings; (2) that issue must have been necessary to the outcome of the earlier proceedings; and (3) the earlier proceedings must have involved the same parties or those in privity with them. It is not disputed that the third criterion is satisfied in this case, because the same parties are involved in this action as were involved in the state proceedings.

## III.

The ADEA makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The complaint contends that the defendant violated the ADEA both by constructively discharging the plaintiff and by altering the "terms, conditions, or privileges" of her employ-

ment in transferring her from one position to another. These two contentions will be considered *seriatim*.

### A.

Our Court of Appeals held in an earlier ADEA action that "[a] constructive discharge occurs when the employer, rather than acting directly, 'deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation.'" *Pena v. Brattleboro Retreat*, 702 F.2d 322, 325 (2d Cir. 1983) (Winter, J.), *quoting Young v. Southwestern Savings and Loan Association*, 509 F.2d 140, 144 (5th Cir.1975).

It is clear that the issue of whether the plaintiff's working conditions had been rendered "so intolerable that [she was] forced into an involuntary resignation" was "actually litigated" in the state proceedings. For example, the opinions of the appeals referee and the Superior Court make reference to the defendant's representations that the plaintiff's title and salary would remain unchanged after the transfer as well as to the plaintiff's objections that the transfer would require her to commute a longer distance to work and to report to persons who previously had been her equals or subordinates.

The appeals referee, the Employment Security Board of Review and the Superior Court all concluded on the basis of such evidence that the plaintiff was not entitled to unemployment compensation, because "the change of jobs by the plaintiff was not a substantial deviation from her existing employment, and therefore there was no substantial and materially disadvantageous change to justify the plaintiff's termination of her employment." *Rotert v. Administrator, Unemployment Compensation Act, supra,* slip op. at 2. This conclusion is tantamount to a finding by the Division, affirmed on appeal by the Superior Court, that the defendant did not constructively discharge the plaintiff by "deliberately make[ing] [her] working conditions so intolerable that [she was] forced into an involuntary resignation."

The result reached by the state tribunals in this case is consistent with the result reached by our Court of Appeals in *Pena v. Brattleboro Retreat, supra,* 702 F.2d at 325, which held that an ADEA claimant had not been constructively discharged when she resigned following a change in her job responsibilities without any reduction in pay or change in title. *See also Frazer v. KFC National Management Company,* 491 F.Supp. 1099, 1105 (M.D.Ga. 1980), *aff'd without opinion,* 636 F.2d 313 (5th Cir.1981) (holding that the ADEA "is not intended to prevent employers from changing the job responsibilities of their 40 to 65 [now 70] year old employees ... [nor] to give 40 to 65 [now 70] year old employees the right to walk out and sue their employer because they dislike their changed job responsibilities").

There is no indication in the record that the plaintiff was prevented from fully litigating this issue in the state proceedings. Indeed, the plaintiff was represented by counsel at the state administrative hearing and at later stages of her appeal, *see* Affidavit of Kathryn Sniffin, Exhibit A (Decision of Appeals Referee) (filed June 21, 1985), and was afforded by law an opportunity to call witnesses, to introduce evidence and to present legal arguments in her behalf. *See, e.g.,* C.G.S. §§ 31–242 (Referee's Hearing of Claim on Appeal from Examiner), 31–244a (Procedure on Appeals), 31–245 (Authority to Administer Oaths and Issue Subpoenas), 31–246 (Enforcement of Subpoena), 31–247 (Witness Fees). The plaintiff could have sought to introduce additional evidence or testimony in appealing the referee's decision to the Board of Review upon a showing that "the ends of justice so require." *See* Plaintiff's Exhibit E (filed Sept. 7, 1984) (Appeal to Board of Review).

Furthermore, a consideration of the issue of constructive discharge was clearly necessary to the determination reached in the state proceedings. The Connecticut Unemployment Compensation Law, C.G.S. § 31–236(2)(A), provides that an individual shall

be disqualified from receiving unemployment benefits if it is found that

> he has left suitable work voluntarily and without sufficient cause connected with his work, provided no individual shall be ineligible for benefits if he leaves suitable work for cause, including leaving as a result of changes in conditions created by his employer.

Consequently, a finding that the plaintiff had been forced to leave her job involuntarily "as a result of changes in conditions created by [her] employer" would have reversed the outcome of the state proceedings.

The court therefore holds that the plaintiff is precluded by the doctrine of collateral estoppel from asserting in this action that she was constructively discharged from her employment at the Jefferson Federal Savings and Loan Association.

#### B.

The plaintiff seeks to escape the preclusive effect of collateral estoppel by contending that, even if one assumes for the argument that the validity of her claim of constructive discharge was "actually litigated and necessarily determined" in the state proceedings, the issue of her allegedly discriminatory transfer from one position to another was not. The court concludes that the plaintiff cannot state a claim under the ADEA even if the alleged discriminatory transfer ought to be treated as an issue separate and distinct from the alleged constructive discharge.

It is axiomatic that a plaintiff can state a claim for relief under the ADEA only by establishing that she suffered a materially adverse change in the terms or conditions of her employment as a result of her employer's discriminatory conduct. *See* 29 U.S.C. § 621(a)(1) (emphasizing that the ADEA was designed to promote the interests of older workers who had lost jobs or suffered similar "disadvantage[s]" in their efforts to retain employment).

■ In other words, the ADEA was intended by the Congress, and has been ap-

plied by the courts, to provide a cause of action for older workers whose employers or potential employers fired them, refused to hire them or to recall them from layoffs, denied them promotions, salary increases or fringe benefits, or otherwise caused them some tangible injury on account of their age. *See, e.g., Equal Employment Opportunity Commission v. Borden's, Inc.,* 724 F.2d 1390 (9th Cir.1984) (denial of severance pay); *Equal Employment Opportunity Commission v. Westinghouse Electric Corporation,* 725 F.2d 211 (3rd Cir.1983), *cert. denied,* —— U.S. ——, 105 S.Ct. 92, 83 L.Ed.2d 38 (1984) (denial of "layoff income and benefits"); *Kelly v. American Standard, Inc.,* 640 F.2d 974 (9th Cir.1981) (termination of employment); *Equal Employment Opportunity Commission v. Sandia Corporation,* 639 F.2d 600 (10th Cir.1980) (discriminatory layoff policy); *Houghton v. McDonnell Douglas Corporation,* 553 F.2d 561 (8th Cir.1977), *cert. denied,* 434 U.S. 966, 98 S.Ct. 506, 54 L.Ed.2d 451 (1977) (reassignment and reduction in salary followed by discharge for protesting discrimination). The ADEA was never intended to serve as a vehicle for litigating changes in duties or working conditions that cause no materially significant disadvantage to the older employee.

■ The plaintiff in this action, having been precluded from denying that she left her job voluntarily and without sufficient cause prior to the proposed transfer, cannot claim to have suffered any tangible harm incident to the transfer that is potentially compensable under the ADEA. For example, she cannot establish that she incurred any additional costs or experienced any diminution in her salary, benefits or working conditions as a result of a reassignment that she never accepted. *Cf. Pena v. Brattleboro Retreat, supra,* 702 F.2d at 325 (denying ADEA claim by plaintiff who was faced with change in job responsibilities without loss of pay or change in title); *Frazer v. KFC National Management Company, supra,* 491 F.Supp. at 1105 (stating that the ADEA was not intended to provide older workers with a

cause of action merely for a change in their job responsibilities); *Cowen v. Standard Brands, Inc.,* 572 F.Supp. 1576, 1581–1582 (N.D.Ala.1983) (holding that employee who declines employer's offer of transfer to comparable job at same salary but different location relinquishes claim to back wages, liquidated damages and equitable relief under ADEA).

Moreover, the ADEA would not permit the plaintiff to recover either punitive damages or compensatory damages for the emotional pain and suffering that she allegedly suffered as a result of the defendant's actions. *See Johnson v. Al Tech Specialties Steel Corporation,* 731 F.2d 143, 146–148 (2d Cir.1984) (Kaufman, J.) (holding that employee who failed to document any claim for lost wages due to employment discrimination could not recover compensatory damages for emotional distress or punitive damages under the ADEA).

The Court of Appeals in *Borque v. Powell Electrical Manufacturing Company,* 617 F.2d 61 (5th Cir.1980) (Johnson, J.), considered the damages available to a plaintiff who unsuccessfully alleged that she had been constructively discharged from her former position as a result of employment discrimination. The plaintiff in that Title VII action contended that her employer had forced her to resign by paying her a lower salary than had been paid to male employees performing the same job. The trial court rejected the plaintiff's claim of constructive discharge but found that the defendant had violated Title VII by paying a reduced salary to the plaintiff. In affirming the district court, the Court of Appeals held that the plaintiff could recover back wages to compensate for the wage disparity only from the time of her hiring for the job until the time of her resignation. She was not allowed to recover lost wages for the period following her resignation until she obtained alternative permanent employment. The plaintiff in the instant case, like the plaintiff in *Borque,* cannot recover damages for the period following her voluntary resignation; however, this plaintiff, unlike her counterpart in *Borque,* suffered no damages prior to her resignation that might be recoverable in this action.

Finally, the plaintiff is precluded from asserting that she would have suffered compensable harm if she had not resigned from the defendant's employ but instead had accepted the proposed reassignment. The state Superior Court, in affirming the decision of the Division, held that the transfer would cause no "materially disadvantageous change" in the terms, conditions or privileges of the plaintiff's employment. *See Rotert v. Administrator, Unemployment Compensation Act, supra,* slip op. at 2. As noted above, this issue was "actually litigated" in the state proceedings and was "necessary to the outcome" of those proceedings.

Consequently, this court is precluded from considering the plaintiff's claim of wrongful transfer, as well as her claim of constructive discharge, because of the determinations reached in the prior state proceedings. Count One of the plaintiff's complaint therefore must be dismissed.

### C.

■ The plaintiff also seeks to hold the defendant liable under state law for breach of an employment contract and breach of an implied covenant of good faith and fair dealing. These pendent claims must be dismissed because they lack of an independent basis of subject matter jurisdiction. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) ("Certainly, if the federal claims are dismissed before trial, ... the state claims should be dismissed as well."); *Federman v. Empire Fire and Marine Insurance Co.,* 597 F.2d 798, 809 (2d Cir. 1979) ("Dismissal of the state claim is the recommended procedure ... in cases where the federal claim is disposed of prior to trial").

### Conclusion

For the reasons stated above, all three counts of the plaintiff's complaint are here-

by dismissed.  Judgment for the defendant shall enter forthwith.

It is so ordered.