**Larry NORALS, Plaintiff,**

v.

**SCHNEIDER BROTHERS, INC., Defendant.**

**No. 86C2532.**

United States District Court, N.D. Illinois, E.D.

Jan. 26, 1987.

Supplement to Memorandum Opinion and Order Jan. 29, 1987.

Michael D. Freeborn, Freeborn & Peters, Chicago, Ill., for plaintiff.

Mark L. Shapiro, Robert Letchinger, Rudnick & Wolfe, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Larry Norals ("Norals") sues his former employer Schneider Brothers, Inc. ("Schneider"), alleging it fired him because of his race in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.) and 42 U.S.C. § 1981 ("Section 1981").[1] Schneider now moves to dismiss Norals' complaint under Fed.R.Civ.P. ("Rule") 12(b)(6), relying on the allegedly preclusive effect of Norals' earlier loss of unemployment insurance benefits before the Board of Review of the Illinois Department of Labor. For the reasons stated in this memorandum opinion and order, Schneider's motion is denied in principal part but granted to a limited extent.

### Facts

Norals, who had worked for Schneider as a general laborer since April 1980, was fired November 19, 1983 because he allegedly refused to comply with his supervisor's orders. Norals then applied for and was awarded unemployment benefits under the Illinois Unemployment Insurance Act, Ill.Rev.Stat. ch. 48, ¶¶ 300–820 (the "Act").[2] Schneider appealed, claiming Norals was ineligible for benefits because he had been discharged for misconduct connected with his work as defined by Act § 432 A. After an evidentiary hearing (neither Norals nor Schneider being represented by counsel), a hearing referee rejected Schneider's argument.

Schneider sought review of the referee's decision by the Illinois Department of Labor's Board of Review ("Board"). Without receiving additional evidence, Board reversed the hearing referee's decision and found Norals' conduct (D.Mem.Ex. B, at 2):

constituted insubordination and evidenced a willful and wanton disregard of the duties and obligations that [Norals] owed to his employer.

Norals then filed a pro se petition in the Circuit Court of Cook County, seeking review of Board's decision. That court reversed the Board, and Schneider appealed in turn.[3] Schneider was successful before the Appellate Court, which held in October 1985 (D.Mem.Ex. C, at 9):

the Board's decision that [Norals] was ineligible to receive unemployment compensation benefits under section 602A of the Act was not against the manifest weight of the evidence, and the circuit court erred in reversing its decision.

Norals (who had not filed a brief before the Appellate Court) was apparently unaware of that result until some six months later, when the lawyer this Court had appointed to represent him in this action made the necessary inquiries.

Schneider now contends Norals' race discrimination claims here are precluded by Board's decision, ultimately upheld in the Appellate Court. According to Schneider, Norals' ability to have raised his allegations of race discrimination (as a defense to Schneider's misconduct-firing claim) before the hearing referee forecloses the making of the same allegations in this Court. Alternatively Schneider asks that Norals be precluded from disputing the determinations actually made by Board when it determined Norals was guilty of misconduct under Act § 432 A.

### Terminology

All too often, courts and lawyers obscure precisely what is at work in this area of the law by employing the term "res judicata" indiscriminately. Analysis is better served by differentiating between the two branch-

---

1. Norals' original pro se complaint (filed April 14, 1986) also sought relief under the Thirteenth and Fourteenth Amendments and 42 U.S.C. §§ 1983 ("Section 1983") and 1985. Norals' amended complaint (filed October 14, 1986 by appointed counsel) sensibly dropped those claims.

2. Citations to the Act will take the form "Act § ...," referring to the Chapter 48 numbering.

3. In both the Circuit Court and the Illinois Appellate Court, the scope of review was limited to the question whether Board's findings were against the manifest weight of the evidence.

es of the doctrine as "claim preclusion" and "issue preclusion." As explained in *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984) (citations omitted):

> Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. This effect also is referred to as direct or collateral estoppel.... Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit. Claim preclusion therefore encompasses the law of merger and bar.

Nor are matters made easier by the frequent Illinois state court practice of referring to "claim preclusion" as "estoppel by judgment," and "issue preclusion" as "estoppel by verdict." See *Redfern v. Sullivan*, 111 Ill.App.3d 372, 375, 67 Ill.Dec. 166, 169, 444 N.E.2d 205, 208 (4th Dist.1982). To avoid confusion, this opinion will speak only of "claim preclusion" and "issue preclusion," even when the authorities under discussion employ other terms.

## Section 1738

Under 28 U.S.C. § 1738 ("Section 1738"), Illinois law provides the rules of decision for determining the preclusive effect of Board's decision on Norals' present federal claims. That statutory extension of the Full Faith and Credit Clause requires a federal court to give a state court judgment the same preclusive effect the courts of that state would give it[4]—at least absent a specific exception created by Congress for a particular type of federal action. Section 1738's mandate applies to Title VII claims (*Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982)) and to claims under the civil rights statutes (*Migra*, 465 U.S. at 85, 104 S.Ct. at 898; *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)[5]). For Section 1738 purposes state court judgments include those that simply review the decisions of state administrative agencies (*Kremer*, 456 U.S. at 466–67, 102 S.Ct. at 1889–90).[6]

This opinion therefore turns to Illinois law. Its specific task is to determine whether and to what extent an Illinois court would give preclusive effect to Board's determination that Norals was guilty of misconduct under Section 432 A and was therefore ineligible for unemployment benefits under the Act. Illinois law calls for that inquiry to focus on Board's decision and not that of the reviewing court, at least to the extent the two decisions are not contradictory. *Edwards v. City of Quincy*, 124 Ill.App.3d 1004, 1012–13, 80 Ill.Dec. 142, 148–49, 464 N.E.2d 1125, 1131–32 (4th Dist.1984). Here nothing turns on that distinction.

## Claim Preclusion

Schneider argues that the prior unemployment benefits proceeding would, in an Illinois court, trigger claim preclusion to bar Norals' present claims. Claim preclusion renders a judgment conclusive both as to what was actually decided and as to what could have been decided in the first action between the parties. *Rotogravure Service, Inc. v. R.W. Borrowdale Co.*, 77 Ill.App.3d 518, 524, 32 Ill.Dec. 762, 767, 395 N.E.2d 1143, 1148 (1st Dist.1979).

---

**4.** As *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 480–83, 102 S.Ct. 1883, 1896–99, 72 L.Ed.2d 262 (1982) makes clear, such prior state court judgments must also satisfy the requirements of the Due Process Clause. Despite their informality, Illinois' procedures under the Act do not pose due process problems.

**5.** Though both *Migra* and *Allen* dealt with Section 1983 claims, no different rule should apply to Noral's Section 1981 claim.

**6.** Because Board's decision was in fact reviewed by the Illinois courts, *Kremer* specifically directs resort to Illinois law for preclusion purposes. Schneider seeks instead to invoke *University of Tennessee v. Elliott*, — U.S. —, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986). But that decision, which examines the preclusive effect of an *unreviewed* state administrative decision under federal common law, is not directly relevant here.

■ Illinois courts have never decided whether a court-reviewed Board decision denying a fired employee unemployment benefits would bar a later action by the ex-employee seeking damages because the firing was allegedly race-discriminatory. There is no doubt claim preclusion can apply to administrative agency decisions that are judicial in nature (*Pedigo v. Johnson*, 130 Ill.App.3d 392, 394, 85 Ill.Dec. 702, 704, 474 N.E.2d 430, 432 (4th Dist.1985)), but the party asserting such preclusion must show the administrative "judgment" otherwise satisfies the requirements for claim preclusion (*Edwards*, 124 Ill.App.3d at 1008, 80 Ill.Dec. at 146, 464 N.E.2d at 1129). Because the identity of the parties or their privies is not in issue in this case,[7] Schneider's remaining burden is to demonstrate that the claims decided by Board involve the same cause of action as Norals' present claims.

Illinois law does not necessarily permit an automatic "no" on that score, simply because the first action concerned only Norals' entitlement to employment compensation and was before an administrative body that could not have offered Norals the relief he now seeks. In Illinois a "cause of action" is not defined by the source of a claim or the relief requested. Rather, as *Morris v. Union Oil Co. of California*, 96 Ill.App.3d 148, 157, 51 Ill.Dec. 770, 777, 421 N.E.2d 278, 285 (5th Dist.1981) (citations omitted) put it:

> Thus a cause of action consists of a single core of operative facts which give the plaintiff a right to seek redress for the wrong concerned. Even though one group of facts may give rise to different claims for relief upon different theories of recovery, there remains a single cause of action. If the same facts are essential to the maintenance of both proceedings or the same evidence is needed to sustain both, then there is identity between the allegedly different causes of action asserted, and *res judicata* bars the latter action.

That general language might be read as giving Schneider some comfort, though common sense points the other way in this case. Accordingly this Court will give Schneider the benefit of the doubt (at least arguendo), analyzing the problem in literal *Morris* terms.

■ "Identity" of causes of action—as used in *Morris* and like cases—can exist when the operative facts that form the basis for a plaintiff's present action also would have formed the basis for a defense in a previous action (*Lee v. City of Peoria*, 685 F.2d 196, 201 (7th Cir.1982)). That rule, however, applies only "when successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action" (*id.*). Citing *Lee*, Schneider contends the same facts Norals must prove to prevail here would have provided a defense in the unemployment compensation proceeding. Both (1) that position and (2) the preclusive result Schneider seeks to draw from it are flawed for more than one reason.

First, Schneider has not shown Norals' race discrimination claim would in fact have been a defense to the disallowance of unemployment insurance benefits. True enough, such a discrimination claim may be taken into account (say) in an administrative review proceeding to determine whether a public employee has been discharged for "cause" (*Fox v. Civil Service Commission*, 66 Ill.App.3d 381, 391, 23 Ill.Dec. 174, 181, 383 N.E.2d 1201, 1208 (1st Dist.1978)). But Norals' claim of disparate treatment (such as the possibility that similarly-situated white employees, committing like acts of misconduct, had received lesser discipline or no discipline at all) could well have been found irrelevant before Board, where the only issue was whether Norals was guilty of misconduct within the meaning of

---

7. As *Kendall v. C.F. Industries, Inc.*, 624 F.Supp. 1102, 1105 (N.D.Ill.1986) suggests, the employee and employer do not meet head-on in the administrative review of an unemployment compensation award. But where as here Norals took the initial judicial appeal and Schneider then took the case to the Appellate Court, it would be unduly formalistic not to view Norals as at least a "privy" (if not indeed a party) to that earlier litigation.

Act § 432A[8] (*Battle v. Isaac*, 624 F.Supp. 1109, 1112 (N.D.Ill.1986)).

■ Indeed, the very fact it is necessary to speculate on that question—as to how Board would have viewed a race-discrimination argument had one been made—is another tipoff to the poverty of Schneider's claim preclusion argument. One important limitation on claim preclusion doctrine is that the losing party in the prior proceeding must have had a full and fair opportunity to litigate the issue now sought to be advanced in the current action. *Jones v. City of Alton*, 757 F.2d 878, 884 (7th Cir. 1985); *Rotogravure*, 77 Ill.App.3d at 525–26, 32 Ill.Dec. at 768, 395 N.E.2d at 1149. Any objective reading of the hearing transcript before the unemployment insurance referee (D.Mem.Ex. A) compels the conclusion that was not so as to Norals:

As is typical of such hearings, Norals was unrepresented by counsel (as was the Schneider supervisor who fired him). Thus the hearing was shaped by the referee (much in the continental inquisitorial style): She dictated the scope of inquiry, without either party having any chance at cross-examination or any real opportunity to launch into any subject the referee did not invite. When either disputant sought to cut into the other's response, the referee cut off that effort immediately. Most significantly, her whole focus was on the events on the day of firing (with some related inquiry into the preceding few days). At the very end of the short hearing—immediately after the referee had probed the detailed conversation between the two men at the moment when the alleged insubordinate conduct took place—the referee asked Norals whether he wanted to add anything. But the resulting colloquy (D.Mem.Ex. A, at 18–20, attached here as App. A) makes it plain Norals could not reasonably have viewed that as an opening to introduce a wholly new subject (and evidence as to an extended pattern of race discriminatory treatment would certainly have been that). It is fair to say no layman would have understood the referee's request to "add" anything that way—and maybe even no lawyer other than an adventuresome and brave one.

■ In sum, the nature of the hearing makes plain two interrelated grounds for rejecting claim preclusion here:

1. the lack of any current showing by Schneider that race discrimination, if raised as an issue in the unemployment hearing, would have been an effective defense to the disallowance of benefits; and

2. the absence of a full and fair opportunity on Norals' part to have raised that issue in any event.

Each of those matters alone might defeat Schneider's argument. Together they devastate it—and they buttress the already-suggested intuitive reaction that Schneider is advancing a meritless position in this area.

■ And there is more—perhaps technical, but no more so than is warranted by Schneider's own hypertechnical contention. As *Lee* itself makes clear (685 F.2d at 201), a party's failure to raise a defense bars a later action based on that defense only when the later action would impair rights established in the first case. In *Lee* the plaintiff (a fired policeman) had failed to present his race discrimination claim to the Board of Police Commissioners, which then determined he should be discharged for false testimony before the Board. *Lee* raised the racial prejudice issue when he appealed the adverse administrative ruling to the courts, but his discharge was upheld.[9] Later he sought to renew his race-

---

**8.** Section 432 A itself would not in terms require consideration of such a defense. It reads:

> An individual shall be ineligible for benefits for the week in which he has been discharged for misconduct connected with his work....

**9.** *Lee, id.* at 200–01 held:

> This [claim of race discrimination] would have been a complete defense [to the firing].

It then went on (*id.* at 201) to reject Lee's argument that the state court had no jurisdiction to review the allegations of race discrimination—so what happened in *Lee* (unlike here) was that a potential complete defense had been

discrimination claim via a Title VII action. Had he been allowed to proceed with that Title VII claim and had he won his case, that decision would have clearly invalidated in its entirety the earlier action, which had found Lee was properly discharged despite his claim.

By contrast, if Norals is allowed to proceed with his Title VII claim, a victory would not similarly conflict with Board's earlier determination: Suppose, for example, he had indeed been fired for misconduct (thus disqualifying him for unemployment benefits) while similarly-situated white employees had received lesser discipline or no discipline at all. If so, there would be no inconsistency in his winning here despite having lost earlier. And in all events, Schneider's rights established in the earlier case (the setting of the employer's unemployment experience rates without the adverse effects created by benefit payments to Norals) would remain intact—wholly unimpaired. In *Lee* terms, the present case is just not one in which the failure to raise a defense can fairly block a plaintiff from bringing a later claim based on that unasserted contention.

Schneider's claim-preclusion argument did not have the ring of plausibility from the outset. Analysis has confirmed its lack of soundness.

## Issue Preclusion

Alternatively, Schneider seeks to bar Norals from disputing any factual issues that

were in fact resolved by Board and approved on review by the Appellate Court. Such issue preclusion would not, of course, bar Norals' race discrimination claims as such. One example (and not necessarily the only one) is obvious: Under both Title VII and Section 1981, even if Norals were foreclosed from arguing that the facts as developed at the hearing did not provide an otherwise valid reason for firing him,[10] he could still prevail by proving the real reason Schneider fired him was because of his race (see *Battle*, 624 F.Supp. at 1113). Norals did not make such a "pretext" argument during the unemployment benefit proceedings.[11]

Like claim preclusion, issue preclusion is an equitable doctrine and applies only when it is fair to do so (*Fred Olson Motor Service v. Container Corp.*, 81 Ill.App.3d 825, 830, 37 Ill.Dec. 5, 8, 401 N.E.2d 1098, 1101 (1st Dist.1980)). There is a good deal that might be said for urging the possible unfairness of applying that doctrine here had the prior hearing actually dealt with race discrimination, so that the full application of issue preclusion would defeat Norals' claim here entirely: Norals' lack of representation by counsel at the prior hearing[12]; the much lower stakes at issue in the unemployment insurance proceedings than in this action[13]; and the material difference in the policies served, and the issues posed, by the different statutes.[14] Precisely those

urged in the prior case, and *lost*. That was the context for *Lee*'s claim preclusion analysis.

**10.** That would be the most unfavorable characterization of what Board actually decided.

**11.** This is wholly apart from the earlier-discussed question whether such an argument would have had any legal effect even if asserted.

**12.** Contrast *Rotert v. Jefferson Federal Savings and Loan Ass'n*, 623 F.Supp. 1114 (D.Conn. 1985), where preclusive effect was given in an ADEA action to an issue decided in an earlier court-upheld unemployment compensation proceeding. There the plaintiff had been represented by counsel in this prior proceeding (*id.* at 1118).

**13.** See, e.g., *Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1284 (9th Cir.1986), citing

*Restatement (Second) of Judgments* § 28(5) comment j (1982) to precisely that effect. Because the earlier unemployment insurance decision in *Mack* had not been judicially reviewed, Section 1738's full-faith-and-credit mandate did not apply, so the Court of Appeals approached the problem as one under federal common law (a route this Court cannot travel).

**14.** Although issues may appear identical in purely superficial terms, that may not really be the case when they are decided under entirely different statutes. See *Godare v. Sterling Steel Casting Co.*, 103 Ill.App.3d 46, 51, 58 Ill.Dec. 588, 591–92, 430 N.E.2d 620, 623–24 (5th Dist. 1981) ("disability" for Workers' Compensation Act purposes not conclusive as to "permanent incapacity" under pension agreement). That concept, for example, would prevent issue preclusion in this case as to the notion of "miscon-

considerations informed the decisions in *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 362 (4th Cir.1985) and *Taylor v. City National Bank,* 642 F.Supp. 989 (S.D.W.Va.1986), where the ex-employers of Title VII plaintiffs were not permitted to rely on issue preclusion that the former employers claimed to have arisen out of the employees' earlier failure to qualify for unemployment benefits.

With all respect to those decisions, however, they do not call for a like conclusion here. *Ross* (obedient to *Kremer*) followed established Maryland law (*Cicala v. Disability Review Board for Prince George's County,* 288 Md. 254, 418 A.2d 205 (1980)) that gave virtually no preclusive effect to any prior administrative determination under a different statute. And the *Taylor* court followed *Ross* (decided by the *Taylor* court's own Court of Appeals) in predicting what the West Virginia Supreme Court would do if faced with the same problem. In each case, the effect of applying issue preclusion would have been entirely to prevent the ex-employee from urging Title VII race discrimination, solely because he or she had lost a like argument and therefore failed to collect unemployment benefits (10 weeks' worth in *Ross,* an unstated amount in *Taylor*).

No Illinois authority has been adduced to parallel the Maryland case law that controlled in *Ross* (if anything, the

implications from our Court of Appeals' application of Illinois law in *Lee* would cut the other way [15]). And (perhaps more importantly) the much narrower issue-preclusion potential here does not implicate the same policy considerations adverted to in *Cicala* and necessarily followed in *Ross.* To the extent Norals' unemployment insurance proceedings decided issues of *fact*,[16] as to which Norals had input and a real stake in the outcome, there is no policy reason that Norals should be entitled to relitigate them. Schneider had—and met—a heavy burden of proof in those earlier proceedings.[17] Norals told his story as to the occurrences on the date of termination, as did his boss. It came down to a straight matter of credibility, and Schneider prevailed. None of the factors identified in the text here at nn. 12–14 militates against determinative effect being given in this case to that purely factual determination in Board's proceedings.[18]

Accordingly the matter resolves itself to a careful limitation of the issues that Norals may not relitigate in this case. "Misconduct"—a wholly conclusory concept that finds no echo in the statutes at issue here—will not be the measure of issue preclusion in this action. Instead the scope of the preclusive bar will be a function of the factual issues that were resolved by the Board in Schneider's favor and upheld by the Appellate Court. More precise defini-

duct" as such, which is the statutory standard under Section 438 A.

**15.** It is true *Lee* did not essay any studied review of the Illinois cases. But neither any of the Illinois authorities cited by Norals nor this Court's independent review even hints at a broader application of the full-and-fair-opportunity requirement than that undertaken by this opinion.

**16.** Again this is an important distinction to make. Of course the issues of law in the two proceedings are quite different ("misconduct" in the Act has no direct counterpart in Title VII, and as already explained the effect (if any) of race discrimination in negating "misconduct" is entirely problematic).

**17.** To defeat Norals' right to benefits, Schneider had to and did show Norals' conduct was in "willful or wanton disregard of the employer's

interests." *Kendall,* 624 F.Supp. at 1107; *Winklmeier v. Board of Review,* 115 Ill.App.3d 154, 70 Ill.Dec. 880, 450 N.E.2d 353 (5th Dist.1983).

**18.** Nothing here is in any way inconsistent with either of Judge Moran's thoughtful recent decisions in *Kendall* and *Battle.* *Kendall,* 624 F.Supp. at 1105–06 followed Illinois law in rejecting an employee's offensive use of issue preclusion in light of the employer's heavy burden under the Act, while this case involves the entirely proper *defensive* use of issue preclusion by an employer that has met that heavy burden. *Battle,* 624 F.Supp. at 1111 dealt with an unappealed administrative decision, while this case involves a decision upheld by the Appellate Court. Even so, *Battle, id.* at 1113 suggested precisely the same type and range of factual preclusion this Court applies here.

tion will be left to the parties' drafting (to be ultimately embodied in the final pretrial order), subject to this Court's resolution of any differences of view between the litigants in that respect.

*Conclusion*

Schneider has been too greedy in its efforts here. It has impermissibly urged claim preclusion stemming from Norals' failure to obtain unemployment insurance benefits. Its motion to dismiss is denied, and it is ordered to answer the Second Amended Complaint on or before February 6, 1987.

Schneider's fallback argument seeks to overreach its proper position as well. Nonetheless it is entitled to the more limited range of issue preclusion defined in this opinion. More fine-tuned definition will take place when the parties shape the final pretrial order.

### APPENDIX A

EMPLOYER: Fine.

I would like to say that everyday he takes his lunch at 12:30.

A. 12:45

EMPLOYER: Or 12:45 and there was no reason that he shouldn't have taken his lunch that day. I mean I—

Q. But when he didn't and you saw this—

EMPLOYER: I didn't know he didn't.

Q. You mean to tell me during the conversation with him and he told you to give him his check that he never told you that he hadn't been to lunch?

EMPLOYER: He said, give me my check. I am going home. That is what he kept repeating, to me.

Q. Uh-huh

EMPLOYER: He did not change his clothes when we had the confrontation. He was in his work clothes. He was given the job and he walked away to go do the job. He came back and that's when he changed. He walked up to me and said give me my check.

Q. Uh-huh

A. I can't find the stub.

Q. All right, is there anything else that you want to add?

A. No

Q. Did you ever curse him, Mr. Gawdzik?

EMPLOYER: No, I don't curse.

Q. All right

Is there anything else?

A. From me?

Q. Yeah

A. Oh yes.

Q. Well, this is the time.

A. Well, I gave Mr. Gawdzik a letter, which they took out $31.00, without giving me no kind of warning.

Q. What has that got to do with how you got fired? That is the only thing I am talking about.

A. Oh, okay.

Q. Well, that is the only thing I am talking about. What is relevant to that?

A. Oh, I see.

Q. This is not a place to review the employers whole work history.

A. Yes mam.

Q. Do you have anything else to add on how you came to be separated from the job?

A. Yes

Q. There is a wage claim division here in the building, if you feel you have money owing you. I'm not trying to close you out on that. You just have to go to the wage claim department, in the building.

This is the—This is not the form for that.

A. Okay

Q. Regarding separation—How you came to be separated. Anything else Mr. Norals?

A. Yes

I don't see why he did that to me that day. He promised it to me, you know.

But, I just couldn't understand. All he had to do was tell me, I want you do work a whole day. Instead he told me I could leave after I finished a certain job. I didn't never turn down a job. I never talked back to him. I don't where the misconduct comes from.

Q. Well, insubordination to the employer, which means you refused to follow orders.

A. Oh

Q. Now, have you ever gotten your check in time to go to lunch and come back to work?

A. Yes mam, I have.

Q. How often has that occurred??

A. I would say about six times.

When he is feeling real nice, he would do it.

Q. Do you give the employees their checks sometimes, so they can cash them and go out to lunch, the day of pay day, Mr. Gawdzik?

EMPLOYER: On occassion if an employee comes up to me and say he doesn't have money for lunch. The, I say, sure go ahead.

Q. All right

But, you are saying the claimant made no such request of you?

EMPLOYER: If he would have, I probably would have. I'm not a bad guy.

Q. Uh–huh

EMPLOYER: I try—

Q. You are a good guy.

EMPLOYER: I try to do what I can for my employees.

Q. Okay, all right, is there anything else gentlemen? If there is nothing else, I will close out the hearing. Thank you for testifying. A copy of my decision will be mailed.

This hearing is closed.

WHICH WAS ALL THE EVIDENCE OFFERED, HEARD OR RECEIVED IN THE HEARING OF THE ABOVE ENTITLED MATTER.

Hearing Referee

## SUPPLEMENT TO MEMORANDUM OPINION AND ORDER

This Court's January 23, 1987 memorandum opinion and order (the "Opinion") rejected in principal part the efforts of Schneider Brothers, Inc. ("Schneider") to bar the Title VII complaint of its ex-employee Larry Norals ("Norals") on claim preclusion and issue preclusion grounds. Schneider's claim preclusion argument was turned down in its entirety.

As chance would have it, our Court of Appeals had dealt with a like problem just one day earlier (*Kirk v. Board of Education of Bremen Community High School District, No. 228*, 811 F.2d 347 (7th Cir.1987)), and this Court received that slip opinion yesterday. In *Kirk* the employer was also unsuccessful in urging claim preclusion against its former employees' Title VII claims, even though its argument was based on earlier proceedings of a far more formal and closely related nature than those in this case. Significantly for current purposes:

1. *Kirk*, at 351 confirmed this Court's approach (Opinion at 350) of looking to Illinois law because of the dictates of 28 U.S.C. § 1738.

2. *Kirk*, at 352–55 gave an even less generous reading to the "same cause of action" concept under Illinois law than this Court has been willing to—and did— apply purely for the sake of argument (Opinion at 351–52).

Accordingly the portion of the Opinion that dealt with claim preclusion has been confirmed—really in a fortiori terms—by the contemporaneous development in our Court of Appeals. This opinion is therefore purely supplementary to the Opinion, requiring no change in the order rejecting Schneider's claim preclusion motion.