**TUTEUR ASSOCIATES, INC., Plaintiff,**

v.

**TAUBENSEE STEEL & WIRE COMPANY, Defendant.**

No. 94 C 62.

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 17, 1994.

James J. Casey, Mary Beth S. Robinson, Keck, Mahin & Cate, Chicago, IL, James H. Westmoreland, Houston, TX, for plaintiff.

Michael R. Levinson, Carolyn E. Knecht, of Seyfarth, Shaw Fairweather & Geraldson, Chicago, IL, for defendant.

### MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Tuteur Associates, Inc. ("Tuteur") has brought this diversity-of-citizenship action against Taubensee Steel & Wire Company ("Taubensee"), charging Taubensee with a

---

breach of written and oral contracts by having refused to accept and pay for coils of steel wire rod delivered to it by Tuteur. Taubensee has moved for summary judgment under Fed.R.Civ.P. ("Rule") 56.[1] For the reasons set forth in this memorandum opinion and order, its motion is granted and this action is dismissed with prejudice.

## Facts

On April 17, 1990 Taubensee placed a Purchase Order (D.Ex. 1) with Tuteur for a total of 2000 tons of steel wire rod to be delivered on June 15 and July 20, 1990 (D. 12(m) ¶ 6). Tuteur responded by sending Taubensee three Sales Contracts (D.Ex. 2) dated June 11, 1990 that collectively stated a total of 1500 "MT" (metric tons) of steel wire rod would be "Shipped from Europe around July/August 1990" and that departed in other material respects from the terms of the Purchase Order (D. 12(m) ¶ 12). Each Sales Contract included a provision requiring that any dispute be resolved by arbitration, although the Purchase Order had contained no such requirement (id. ¶ 14), and each was signed by a representative of Tuteur and had a blank signature block for a Taubensee representative under the language "Kindly return one copy duly accepted" (id. ¶ 15). Taubensee neither signed nor returned any of the Sales Contracts to Tuteur (id.).

About August 14, 1990 Tuteur shipped some 3,000 tons of steel wire rod to the Port of Milwaukee, Wisconsin for delivery to Taubensee (Complaint ¶ 6). Taubensee accepted and paid for roughly 516 MT of that shipment (P. 12(n) ¶ 34). Tuteur concedes that approximately 477 MT of the remaining tonnage did not meet Taubensee's specifications due to salt water damage, but Tuteur asserts that Taubensee improperly refused acceptance of the balance, some 2007 MT (Complaint ¶ 6).

Tuteur initially sued Taubensee for breach of contract in the Southern District of Texas, but the district court there ruled that it lacked personal jurisdiction over Taubensee (D. 12(m) ¶¶ 19-20). When the case was then transferred to this District Court, Tuteur voluntarily dismissed it on June 9, 1992 (id. ¶ 20). Then on September 14, 1992 Tuteur filed a "Demand for Arbitration" of that claim to be heard before the American Arbitration Association in New York City (id. ¶ 21, D.Ex. 5).

In February 1993 Taubensee filed an action in this District Court (the "Prior Action," Case No. 93 C 1244) to stay those proceedings on the ground "that there is no agreement to arbitrate" (D. 12(m) ¶ 22; D.Ex. 6 at 1). Cross-motions for summary judgment followed (D. 12(m) ¶ 23). On December 6, 1993 this Court's colleague Honorable Brian Barnett Duff granted Taubensee's motion (id. ¶ 24), stating in full (D.Ex. 11 (citations omitted)):

> The case arises out of an alleged 1990 steel purchasing agreement between Plaintiff, Taubensee Steel and Defendant, Tuteur Associates, Inc. ("Agreement"). The parties dispute whether, despite the existence of terms in the Plaintiff's "Purchase Order" providing that its terms should be the

---

**1.** Familiar Rule 56 principles impose on the movant the burden of establishing the lack of a genuine issue of material fact (*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). For that purpose this Court is "not required to draw every conceivable inference from the record—only those inferences that are reasonable"—in the light most favorable to the nonmovant (*Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991) and cases cited there). This District Court has instituted its own General Rule ("GR") 12 to facilitate the resolution of Rule 56 motions:

> 1. GR 12(m) requires every Rule 56 movant to submit a statement of assertedly uncontested facts, with citations to the record in support of each of those facts.

**2.** GR 12(n) requires the nonmovant to respond point by point, with citations to the record in support of (1) any claimed contest of the movant's version of the facts and (2) any additional facts that the nonmovant chooses to assert.

Here Taubensee's GR 12(m) statement will be cited "D. 12(m) ¶—," while Tuteur's GR 12(n) response will be cited "P. 12(n) ¶—" (its own statement of additional facts is simply numbered sequentially to follow its response to Taubensee's statement). Where Tuteur's GR 12(n) response either explicitly or implicitly admits an assertion in Taubensee's GR 12(m) statement, only the latter will be cited.

sole provisions of the Agreement, the Plaintiff is bound by arbitration provisions included in the Defendant's "Sales Contracts."

Assuming, arguendo, that any contract was formed between the parties, or if the contract was formed between "merchants" pursuant to U.C.C. 2–207(a), the arbitration provisions would not be a part of that contract in the case at bar. This is because the Purchase Order expressly limited acceptance to its terms and made no mention of an arbitration provision. The Plaintiff's Purchase Order explicitly stated that it was "conditioned upon Seller's acceptance of all terms and conditions stated [therein]" and that such "terms and conditions may not be modified, added to, or deleted without the express written consent of Taubensee Steel & Wire Company." The Purchase Order also stated that its terms "constitute the sole terms and condition of this contract," and that no other terms "shall be binding upon Taubensee, unless hereafter made in writing and signed by our authorized representative." Moreover, the Purchase Order stated, "We specifically object to any different terms in any document or writing prepared or furnished by the seller." The Defendants had notice of the conditions in the Plaintiffs [sic] Purchase Order expressly limiting the Defendant's acceptance. Hence, the Plaintiff's conditions are enforceable.

Moreover, even if the parties conducted themselves as if they had an agreement, 2–207(c) provides that only those terms on which the writing of the parties *agree* are enforceable.

The Defendant's arguments that (1) the Plaintiff accepted the arbitration provisions because it never objected to any terms in the Sales Contracts and sent no written notice of objection to the contents of such Sales Contracts within (10) days of receiving them (Citing, U.C.C. 2–201(2)), and (2) that the Plaintiff's inclusion of the typewritten phrase, "terms subject to additional discussion" constituted the Plaintiff's "express written consent" that the terms and conditions in the Purchase Order could be modified are rejected for the reasons stated in open court.

Accordingly, the Plaintiff's Motion for Summary Judgment is granted and the Defendant's Motion for Summary Judgment is denied.[2]

Judge Duff's decision was never appealed and has become final, and Tuteur's arbitration claim was dismissed because of that decision (D. 12(m) ¶¶ 28–29).

Tuteur contends here that it had a written contract for the delivery of the 1,500 MT of steel wire rod referred to in its Sales Contracts (rather than the 2,000 tons specified in Taubensee's Purchase Order) (D. 12(m) ¶ 13; Complaint ¶ 5), plus an oral contract for the delivery of an additional 1,500 MT subject to the same conditions as the Sales Contracts (D. 12(m) ¶ 18; Complaint ¶ 5), thus explaining its delivery of the 3,000 MT shipment. Taubensee responds that those claims are respectively barred by issue preclusion[3] and by the Statute of Frauds, warranting a total grant of summary judgment in its favor.

### Issue Preclusion

 In this diversity action this Court looks to the substantive law (including the choice-of-law rules, *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)) of Illinois, the forum in which this Court sits (*Jaurequi v. John Deere Co.*, 986 F.2d 170, 172 (7th Cir.1993)). If the Prior Action had been a state court

---

**2.** [Footnote by this Court] Judge Duff's opinion thus resolved the parties' dispute over the impact of the UCC's "Battle of the Forms" provision, 810 ILCS 5/2–207. By chance, less than a month ago our Court of Appeals has had the occasion to speak at length to that issue in *Northrop Corp. v. Litronic Ind.*, 29 F.3d 1173 (7th Cir.1994). In light of the decision reached here, there is no need to compare the just-quoted analysis with *Northrop* 's.

**3.** As this Court announced some years ago in *Norals v. Schneider Bros., Inc.*, 651 F.Supp. 1324, 1326–27 (N.D.Ill.1987) (and perhaps before that), it invariably follows the lead of *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984) in employing the terms "issue preclusion" and "claim preclusion" rather than the potentially confusing (though more traditional) "collateral estoppel" and "res judicata."

lawsuit, *Migra*, 465 U.S. at 80–81, 104 S.Ct. at 895–96 teaches that the Illinois law of preclusion would control because of Congress' mandate in 28 U.S.C. § 1738 (a statutory extension of the Full Faith and Credit Clause). But because the Prior Action was in a federal and not a state court, *Klaxon* calls for this Court to give the decision the same preclusive effect that an Illinois court would extend to an earlier federal court action. Because the Illinois choice-of-law rule is that "the collateral estoppel or res judicata effect of a judgment is determined by the law of the jurisdiction where the judgment is rendered" (*Instituto Nacional de Comercialization Agricola v. Continental Ill. Nat'l Bank & Trust Co.*, 858 F.2d 1264, 1271 (7th Cir.1988)), we are returned to the Seventh Circuit's version of the issue preclusion doctrine.[4] And in that respect *Freeman United Coal Mining Co. v. Office of Workers' Compensation Program*, 20 F.3d 289, 293–94 (7th Cir.1994) teaches:

> To successfully invoke collateral estoppel, the party asserting it must establish the following four factors: (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must have been actually litigated; (3) the determination of the issue must have been essential to the final judgment; and (4) the party against whom estoppel is invoked must be fully represented in the prior action.[5]

Because it is unnecessary to pause over the fourth element for more than a moment, it will be addressed out of order. Tuteur was not only a litigant in the Prior Action (of course), but it also had and exercised a full opportunity to address the issues there (indeed, it filed its own unsuccessful motion for summary judgment). That is the substantive import of the final issue preclusion component (as demonstrated by the references to "a 'full and fair opportunity' to litigate that

issue in the earlier case" in such opinions as *Allen v. McCurry*, 449 U.S. 90, 95, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980)), and it has plainly been satisfied here.

To return to the first factor, Tuteur seeks to dispute any identity of issues between the Prior Action and this action—but it does so by mischaracterizing what is at issue. To prevail on its contract claim, Tuteur must perforce prove that its Sales Contracts established the written contract between the parties. And that is precisely what Tuteur had to demonstrate in the Prior Action in order to compel arbitration (it will be recalled that the Sales Contracts, but *not* Taubensee's Purchase Order, contained an arbitration clause).

It is of course true that the ultimate issue here—whether Taubensee did or did not breach the contract between the parties as assertedly embodied in the Sales Contracts— was not "involved" in the Prior Action. Indeed, the second paragraph of Judge Duff's opinion began only by "[a]ssuming, arguendo, that any contract was formed between the parties...." But the essence of *issue* preclusion, after all, is that the prior and the current actions are compared in terms of the relevant issue or issues—not in terms of *all* issues.

Once that mischaracterization by Tuteur has been dispelled, the second and third factors in the issue preclusion equation—whether the relevant issue was actually litigated the first time around, and whether that issue was essential to the final judgment there— are easy to resolve. For those purposes it is enough if the earlier court's ruling embodied a determination that was a crucial predicate of the decision there.

Judge Duff's decision unquestionably rejected the proposition urged upon him by Tuteur: that the Sales Contracts defined the

---

4. This is a classic instance of renvoi—back to the place of beginning—in conflict of laws or choice of law jurisprudence (see Roger Cramton, David Currie & Herma Hill Kay, *Conflict of Laws* 65–70 and 376–79 (4th ed. 1987); and for a brief discussion of the "terror" that the renvoi doctrine may (but need not) pose, see *In re Oil Spill by the Amoco Cadiz*, 954 F.2d 1279, 1336 (7th Cir.1992) (per curiam)).

5. [Footnote by this Court] Taubensee Mem. 7 cites *Crot v. Byrne*, 957 F.2d 394, 396 (7th Cir. 1992) for a differently articulated four-element test, but it is substantively identical to that in *Freeman United*.

relationship between the parties. Instead he held that they did not because "the Purchase Order expressly limited acceptance to its terms and made no mention of an arbitration provision." Nor can Tuteur draw comfort from the fact that Judge Duff did not specifically decide "that any contract was formed between the parties" (his earlier-quoted arguendo assumption). Whether that question would get a "yes" or "no" answer is really irrelevant for current purposes—for again the key to the present action is that *either way* the Sales Contracts, on which Tuteur now seeks to sue, do *not* set out the agreement between the parties.

Finally, the question whether that determination was "essential" to Judge Duff's ruling is the equivalent of requiring that the determination must not have been dictum. And that question really answers itself, for in order to resolve the question whether there was an agreement to arbitrate Judge Duff *had* to decide whether the Sales Contracts (the only documents that contained a commitment to arbitrate) were enforceable between the parties. That decision, based squarely on the Purchase Order's negation of any other terms to which Taubensee had not given its "express written consent," was clearly "essential" to Judge Duff's adjudication of the Prior Action.

In sum, all four factors required for invocation of issue preclusion are unquestionably present here. And because this Court is therefore obligated to honor Judge Duff's earlier determination, Tuteur is precluded from asserting in this action that Taubensee breached a contract whose terms are those contained in the Sales Contracts. Hence Taubensee's Rule 56 motion as to that breach of contract claim must be granted, and that aspect of Tuteur's Complaint is dismissed with prejudice.

---

6. If instead the controlling document were Taubensee's 2,000 ton Purchase Order, the 3,000 ton delivery would still have to be explained in terms of an additional oral agreement.

7. Further citations to the Illinois version of the UCC will take the form "Section ——," employing the UCC numbering (which simply omits "810 ILCS 5/" from the Illinois codification).

*Statute of Frauds*

Tuteur has a second arrow in its quiver: Taubensee's asserted breach of a claimed oral contract for Taubensee's purchase of Tuteur's product. Tuteur really has to advance such a claim, else it would have no way to collect for the additional 1,500 metric tons that it delivered to Taubensee over and above the 1,500 tons referred to in the three Sales Contracts.[6] And because nothing in Judge Duff's ruling implicated the existence or nonexistence of such an oral agreement, issue preclusion does not prevent the resolution of that claim in this action.

With neither litigant having addressed the threshold choice-of-law question under the applicable law (that of Illinois, as *Klaxon* teaches), this Court looks to Illinois substantive law just as the parties have done in their memoranda (*Wood v. Mid–Valley, Inc.*, 942 F.2d 425, 426–27 (7th Cir.1991)). Illinois has adopted the Uniform Commercial Code, including its Statute of Frauds provisions that state in part (810 ILCS 5/2–201(1)[7]):

> Except as otherwise provided in this Section [exceptions that concededly do not apply here] a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker.

Here Tuteur claims under an unwritten contract for the sale of steel wire rod (clearly "goods") for a price that appears to be nearly $180,000.[8]

Tuteur's initial response to Taubensee's Rule 56 motion invoking the Statute of Frauds is that the claimed oral contract was in addition to the claimed written contract between the parties (P.Mem. 6–7, citing no

---

8. Complaint ¶ 8 alleges damages of $240,676.83 for Taubensee's refusal to take delivery of some 2,007 tons of steel wire rod, which works out to roughly $119.92 per ton. That figure, when multiplied by the 1,500 tons shipped in excess of the quantity covered by the Sales Contracts, produces the figure in the text.

authority whatever to explain how that makes any difference). But that does not help Tuteur at all, because modifications of a contract for goods must also satisfy the requirements of the Statute of Frauds (Section 2–209(3); *June G. Ashton Interiors v. Stark Carpet Corp.*, 142 Ill.App.3d 100, 105, 96 Ill.Dec. 306, 309, 491 N.E.2d 120, 123 (1st Dist.1986)). And that is plainly not the case here.

That leaves only Tuteur's last-ditch argument (P.Mem. 7) that Taubensee's "acceptance and payment of approximately 516 metric tons of the steel wire constituted part performance of the oral contract, thus barring application of the Statute of Frauds." But that assertion distorts not only the holding of the only case that Tuteur cites for that proposition [9] but also the rule set out in the relevant statutory provision (Section 2–201(3)), which states:

> A contract which does not satisfy the requirements of subsection (1) [the earlier-quoted Statute of Frauds] but which is valid in other respects is enforceable ... (c) with respect to goods for which payment has been made and accepted or which had been received and accepted (Section 2–606).

By its very wording that partial performance exception is limited to the goods that were "received and accepted" by Taubensee (*Monetti, S.P.A. v. Anchor Hocking Corp.*, 931 F.2d 1178, 1184 (7th Cir.1991); *Lippold v. Beanblossom*, 23 Ill.App.3d 595, 597, 319 N.E.2d 548, 549 (4th Dist.1974)). Here it is undisputed that Taubensee accepted and paid only for some 516 MT (P. 12(n) ¶ 34).[10] Tuteur does not claim that Taubensee has accepted but failed to pay for any additional quantity of steel wire rod—quite to the contrary, its grievance is that Taubensee *rejected* all of the other tonnage.

Thus Tuteur cannot avoid the bar of UCC's Statute of Frauds section to its claim

of Taubensee's breach of an asserted oral contract. Taubensee's Rule 56 motion also succeeds in that respect, and that facet of Tuteur's Complaint must also be dismissed with prejudice.

### Conclusion

Tuteur has advanced two wholly unenforceable claims, albeit they are unenforceable for different legal reasons. There is no genuine issue of material fact, and Taubensee is entitled to a judgment as a matter of law. This action is dismissed with prejudice.

---

9. It is entirely understandable that P.Mem. 7 includes no specific page citations to *Greenwald v. Spring Hill Ford, Inc.*, 173 Ill.App.3d 857, 123 Ill.Dec. 457, 527 N.E.2d 1095 (1st Dist.1988). That case can be searched in vain for any discussion even remotely supporting Tuteur's contention.

10. It is irrelevant whether that tonnage was accepted under some written contract or under the alleged oral contract. In either case the Statute of Frauds bars any other enforceability of the alleged oral contract, either in its entirety or as to the unperformed portion.